## REFORMATION OF A FIRE INSURANCE POLICY.

Court of Appeals for Portage County.

J. R. ROBERTS & SON v. NATIONAL INSURANCE COMPANY OF CINCINNATI.

Decided, March 30, 1914.

*Fire Insurance—Where a Policy is Renewed Without Notice of a Change in Its Conditions—There is an Implied Agreement that the Conditions Will be the Same as in the Old Policy—Burden of Proof in Action for Reformation of Policy.*

An agreement was made between an insurance company and a policyholder to renew such policy. Nothing was said by either party at the time as to any change in the terms of the policy. A renewal policy was issued by the insurer which contained a clause materially affecting the right of the insured to recover in case of loss. The insured upon receiving the policy laid it away without examining it and did not discover the change until after a loss occurred. *Held:*

1. Proof of such facts by clear and convincing evidence entitle the insured to a reformation of the policy by striking out the added clause.
2. The insured on receiving the renewal policy had a right to understand that the terms thereof were substantially the same as those of the first policy; and it was not laches under the circumstances not to read the policy.
3. The insurer claiming that a change was made in the original policy after the same was delivered and that the renewal policy was issued in accordance with such original policy as so changed, the burden of proving such change by clear and convincing evidence is on the insurer.

*J. L. Kohl* and *H. T. Loomis,* for plaintiff.
*W. J. Beckley* and *Webb & Webb,* contra.

METCALFE, J.; NORRIS, J., and POLLOCK, J., concur.

This action was brought to recover upon an insurance policy issued by the defendant company to the plaintiffs January 3, 1912, upon which it is alleged a loss of fire occurred on the 22d day of February, 1912. The answer of the defendant company,

after stating some matters in defense which are unnecessary to be considered now, alleges that the policy contained the following provision:

"It is expressly stipulated that the assured shall before this policy shall take effect (providing that no inventory has been taken within twelve months) make an inventory of the stock to be covered hereby, and shall keep books of account correctly detailing purchases and sales of said stock from and after the date of said inventory, both for cash and credit, and shall keep said inventory and books securely locked in an iron safe, or away from the property hereby insured, during the hours that such store is closed for business. Failure to observe these conditions shall work a forfeiture of all claims under this policy."

It is then averred that plaintiff failed to make an inventory of the stock covered by the policy, failed to keep books of account correctly detailing purchases and sales of stock, and also failed to keep said books locked in an iron safe, or away from the building containing the property insured by said policy, during the hours that the store was closed for business.

Plaintiffs thereupon filed an amended petition in which it is averred in substance that the policy upon which the action was founded was a renewal of a policy issued by the defendant company to the plaintiff January 3, 1911, No. 118588; that said policy, so issued January 3, 1911, did not contain the clause set out in the answer of the defendant, or any provision of like nature; that the policy sued on was issued in renewal of the first policy, and that the plaintiffs were unaware that said second policy contained said provision, and that the same was inserted in said policy without the knowledge of plaintiffs, and that the contract for the renewal of said policy was upon the same terms and conditions as were contained in the policy of January 3, 1911. Plaintiff prays for a reformation of the policy.

It is admitted in the answer to the amended petition that the policy issued January 3, 1911, did not contain the clause in controversy, known technically as the "iron safe clause," but that after it had been issued the defendant had received notice from its local agent that it had been issued without said clause. That

the company declined to carry the plaintiffs' risk unless that provision was made a part of the policy, and that thereafter on February 4, 1911, said policy as originally issued was corrected by the insertion of what is known as the "country store form" and the same appears in policy No. 124387, which is the policy sued on and which form contains the stipulation hereinbefore recited, and the defendant avers that the second policy was a renewal of the first policy as corrected. This is denied by the plaintiffs. The question here presented to us is whether or not the plaintiffs have made a case for the reformation of this contract.

It seems to us that the entire question hinges upon the contention of the defendant that the policy issued January 3, 1911, was corrected by the insertion of the so-called "iron safe clause." It appears conclusively that the first policy did not contain that clause and so far as appears from the evidence at the time the policy was issued, and in the negotiations for the same, nothing was said by the plaintiffs or by the local agent of the defendant company, Mr. E. M. Roberts, of Ravenna, about any such clause. Mr. Roberts, the agent, after he had been informed by the company, as he says, that they did not care to carry the risk without the insertion of that clause, states that he went to the place of business of the plaintiffs and that he said to Mr. Walter Roberts, the son and a member of the firm, that the company declined to carry the policy unless it was changed to the usual country store form, and that he gave to Mr. Roberts a slip containing the clause above quoted, and told him to paste it on the policy, which he says Mr. Roberts agreed to do. Mr. Walter Roberts emphatically and positively denies having any such conversation with Mr. E. M. Roberts or that he ever delivered to him any such paper, as he says he did. Mr. E. M. Roberts says that at this time there was nothing said about an iron safe or any safe, and that all he said about it was that it was the usual country store form of policy and that the company would not carry it in the form in which it had been originally issued.

In order to entitle a party to a reformation of a written contract it is necessary that the proof should be clear and convinc-

ing. Considering the contention of the defendant that the policy was corrected after it had been issued by the insertion of the clause in question, how stands the proof? The first policy issued did not contain the clause in controversy. The evidence is clear enough that this second policy, the one sued on, was a renewal of that policy and that in the negotiations for the renewal nothing whatever was said by either party regarding the iron safe provision, or the country store provision, or anything as to the form of the policy. Whether the renewal was first requested by the plaintiffs, or whether the plaintiff was notified by the agent that the first policy was about to expire and a renewal requested is immaterial. They did negotiate for a renewal, and the renewal contains a clause entirely different and which places upon the plaintiffs additional burdens and obligations which were not contained in the first policy. So that so far as the contract between the parties for the renewal of the first policy is concerned, the evidence is clear and convincing, in fact beyond any controversy, that the second policy was not issued in accordance with the terms and conditions of the first policy and that there was no agreement at that time for any change.

Where a policy has been issued by an insurance company, and is about to expire, and a renewal is requested by the assured, or agreed upon between the insurer and assured without anything being said as to a change in its terms, what is the effect of such a change made by the assured in the terms of the policy? Has the assured a right to make such changes or is the policy to be issued upon the same terms and conditions as the former one? In the case of *Hay* v. *Insurance Company,* 77 N. Y., 235, it is said:

"An agreement to renew a policy of fire insurance, in the absence of evidence that any change was intended, implies that the terms of the existing policy are to be continued.

"A party whose duty it is to prepare a written contract according to a previous arrangement, if he prepares one materially changing the terms of the previous agreement, and delivers it as in accordance therewith, commits a fraud entitling the other to relief.

"Equity will reform a contract where there is a mistake on one side and fraud on the other."

It appears from the facts in this case that the plaintiff and defendant had contracted for the renewal of a policy issued by the defendant company to the plaintiff, and at the time the renewal insurance was effected nothing was said by the parties as to any change in the conditions of the policy. The new policy contained the following clause:

"In all cases of loss the assured shall assign to this company all his right to receive satisfaction therefor, from any other person or persons, town or corporation with a power of attorney, to sue for and to recover the same, at the expense of this company. When insured as a mortgagee, the loss shall not be payable until payment of such portion of the debt shall have been enforced, as can be collected out of the original security, to which this policy may be held as collateral, and this company shall then only be liable to pay such sum, not exceeding the amount insured, as can not be collected out of such primary security."

The holding is that the insertion of this clause in the renewal policy was not in accordance with the terms of the contract, nothing having been said about any change in the terms thereof by the parties, and that consequently the plaintiff was entitled to a reformation of his policy by striking out that clause.

The case of *Palmer* v. *Hartford Insurance Company*, 54 Conn., 488, was also an action to reform an insurance policy. The plaintiffs held a policy of insurance of the defendant upon merchandise, and when the policy expired applied to the company for a renewal on the same terms with the expiring one. The company wrote a new policy and received the premium. The plaintiffs, supposing it to be on the same terms with the first policy, did not examine it until after the loss of the property by fire. Some time afterwards they discovered an important variance from the former policy which affected their right of recovery. It was held that the plaintiffs were not guilty of laches in not examining the policy when it was delivered to them, and they had a right to believe that it would be in all essential

respects like the first, and these facts entitled the plaintiff to a reformation.

The case of *Snell* v. *Insurance Company,* 98 U. S., 85, is also an action for reformation of a policy of insurance. In this case one of the members of a firm, who were the owners of some cotton entered into an agreement through a local agent of the insurance company to insure the cotton for a certain period for its whole value against loss by fire. The member of the firm who solicited the insurance agreed that the insurance should be made in his name upon the representations of the agent that the entire interest of the insurer in the cotton would be thereby protected. The cotton was burned. It was then learned that the policy protected only the interests of the individual member of the firm in whose name it had been issued, and it was held that the plaintiffs were entitled to a reformation of the contract.

The case of *Equitable Insurance Company* v. *Hearn,* 20 Wallace, 494, also holds to the same principle, and in the case of *Fitchner* v. *Fidelity Mutual Fire Association,* 103 Iowa, 276, it is held:

"A mutual mistake in an application for insurance on a stock of merchandise is clearly established where both the insured and the agent soliciting the application testify that it was agreed that there should be $12,000 of concurrent insurance on the stock, and that the agent in writing the application, erroneously fixed this amount as the limit of concurrent insurance on both the stock and the building containing it."

So that we think that it is clear from the authorities that, where there is a renewal of a policy without anything being said by the parties as to a change in its conditions, the agreement is implied that the new policy shall be upon the same terms and conditions as the former one.

It appears that the plaintiffs did not read their policy after receiving it, and it is said that their acceptance of it and retaining it until after the fire without reading it was such negligence on their part as would preclude them from now saying that they did not understand its provisions or that it was not

in accordance with their contract. The mere failure of an assured to read his application for an insurance policy or to read his policy, especially if it is renewal, does not establish any negligence on his part and he has a right to understand that the renewal will be in accordance with the first policy. *Bennett* v. *Ins. Company,* 70 Iowa, 600; *Hagan* v. *Ins. Company,* 81 Iowa, 321; *Donnelly* v. *Ins. Company,* 70 Iowa, 693; *Boetcher* v. *Ins. Company,* 47 Iowa, 353.

Was there a change made in the terms of the first policy by the addition thereto after it had been issued of the clause in controversy? We think not. The policy having been issued without that clause, the burden clearly rests upon the defendant to establish the fact of such change. The authorities cited by counsel for the defendant in this case upon the proposition that to entitle the plaintiff to reform, the proof must be clear and convincing, just as clearly establish the proposition that the party seeking to work a change in the contract after it has been executed must prove his case by more than a preponderance of the evidence. The evidence to establish a change in the contract must be clear and convincing. See the case of *Palmer* v. *Hartford Insurance Company,* 54 Conn., above cited.

The burden, therefore, is upon the defendant to show that the change was made by clear and convincing evidence. The only evidence that the change was made is the evidence of E. M. Roberts, the local agent, of the conversation had with Walter Roberts. This is denied by the latter. The plaintiffs had no iron safe. It does not seem likely, if the plaintiffs had been required to insert a clause into their policy which would absolutely preclude them from a recovery in case of failure to keep their books in an iron safe, that they would have been likely to have accepted it without any protest, so that certainly the evidence in this case is very far from being clear and convincing that such a change was made, or that there was an understanding to that effect, and we think we must hold from the evidence that no such change was made.

We are, therefore, of the opinion and it is the judgment of this court that the plaintiffs are entitled to the relief prayed

for and they may have a reformation of the policy sued on by striking out the clause in question. .