**SOUTHWORTH HEAT TREATING CO., Plaintiff-Appellant, v. CLEVELAND METAL CLEANING CORP., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23540.    Decided December 30, 1955.

Baker, Hostetler & Patterson, for plaintiff-appellant.
John B. Oviatt, for defendant-appellee.

(STEVENS, PJ, DOYLE, J, of the Ninth District, and MIDDLETON, J, of the Third District, sitting by designation in the Eighth District.)

## OPINION

By DOYLE, J:

This is an appeal on questions of law from a judgment of the Cleveland Municipal Court, entered for the defendant pursuant to a directed jury verdict for the said defendant, and the subsequent overruling of the plaintiff's motion for a new trial.

The following facts are sufficient, we think, to point out the questions of law presented.

The Baj Tool Co. and Mutual Metal Products, Inc., forwarded, to the Southworth Heat Treating Co. (plaintiff in the trial court and appellant here), a quantity of metal or steel parts for the purpose of hardening by heat treatment. In this treatment, the silver colored metal changes color, and the work comes out a black or brown color, "with sometimes a tight scale (and), sometimes a little loose, flaky scale." This scale is a metal oxide, and occurs when the metal under high temperature is exposed to "corrosive conditions."

When the machined parts sent to the Southworth Heat Treating Company were heat treated, a scale did form on them, and, as a result thereof, The Southworth Company sent them to The Cleveland Metal Cleaning Corp. (the defendant in the trial court and appellee here), pursuant to contract, for the removal of the scale by a process known in the trade as pickling—i. e., placing the affected parts in an acid bath, which, under certain conditions, causes chemical action.

When the Cleveland Metal Cleaning Corp. had completed its work of pickling and oiling, and returned the parts to The Southworth Co., it was found, so the petition stated, "that said parts were treated in such an unskillful, negligent and unworkmanlike manner that they were so pitted and reduced in diameter as to be unfit for use," and that "by reason of its failure to treat them in the manner agreed upon * * *, plaintiff has been damaged * * *."

The plaintiff sought damages in an amount measured by the entire value of the products when they were delivered to the defendant, plus the enhancement through the heat treatment rendered by plaintiff, less the value as scrap, and, in doing so, it attempted to prove the value of the articles when they were first delivered to it; then the increase in value due to the heat treatment; then the value following the acid treatment by the defendant. The court denied the plaintiff this testimony.

It is not entirely clear from the record upon what theory of law the court based its rulings. Significant, however, is the following assertion in the appellee's brief:

"* * * It will be noticed that the record does not show that the plaintiff proved any damages whatsoever that it personally sustained * * *."

The brief then cites §2307.05 R. C., which provides that an action must be prosecuted in the name of the real party in interest, except as provided in §§2307.06 to 2307.08 R. C., inclusive. These latter sections are not pertinent to this case.

This, then raises the question whether a bailee of goods, who is hired for services to be bestowed upon the things delivered, can sue and re-

cover from a third person to whom the property is bailed by the original bailee, for the entire damage brought on by negligent work upon the property by the said third party. Is such first bailee the real party in interest to sue for the entire damage to the property?

The historic rules of the common law have been generally adopted in this country; that either the bailor or the bailee might sue a tort-feasor for the destruction or injury to the bailed goods. 2 Pollack & Maitland, History of English Law, 169 et seq; Holmes, The Common Law, 167 et seq.

Upon recovery by the bailee of the full amount of the damage to the property, he holds for himself his own damages growing out of his connection with the bailment, and the remainder for the use of, or in trust for, the owner. Nor is the tort-feasor concerned in whether the bailee will account to the bailor in respect to the damages collected, for payment to the bailee will bar any subsequent suit by the bailor. While various theories are advanced for the rules here stated, none of them would seem to present any distinction between actions in tort and actions in contract.

It is not our purpose to explore the several theories upon which the above rules are said to be founded. Some courts say that the right of the bailee to sue for the entire damage is based on his special interest in the bailed property. Others say that his right is based on his possession, or right of possession. Regardless of the reasons for the rule, a full recovery by the bailee must depend on the express or implied consent of the owner, and for this reason the recovery of full damages by the bailee can always be pleaded in bar to any later action by the owner.

It is the conclusion of this court, and we so hold, that the Southworth Heat Treating Co., the original bailee, is the owner of the right sought to be enforced; is in a position to discharge the defendant from further liability for the same damages; and, as a consequence thereof, is a real party in interest within the meaning of the statute.

See: Nosse v. Rose, 45 Oh Ap 54, and cases and texts therein cited.

The record before us shows that the defendant (appellee) agreed to clean the scale from and to oil 960 pounds of heat-treated steel parts, and do the work in accordance with the usual and ordinary commercial practice; the parts had been received from the bailor by the plaintiff (appellant), and, while being heat treated, a scale had formed—not an unusual occurrence, and causing no material damage to the parts; the parts were then delivered to the defendant for the removal of the scale, and, upon completion of this operation, the parts were returned to the plaintiff, when it was discovered that they had been so damaged that they had only a scrap value.

The testimony further was to the effect that the parts had been damaged by over-pickling, either because (1) they had been kept too long in an acid bath, or (2) the temperature of the acid was too high, or (3) the concentration of the acid was too great.

As heretofore indicated, the plaintiff offered testimony to prove the reasonable value of the steel parts when they were delivered to the

original bailee, the plaintiff; the amount by which their value had been enhanced by the heat treatment; and the reasonable value of these parts when they were returned to the plaintiff in their damaged condition. This testimony was denied the plaintiff.

In ruling out this evidence, we find error of a prejudicial character committed by the court, as will be later demonstrated.

The alleged tort-feasor, if a jury should find it to be such, was required to respond in damages for the difference between the reasonable value of the goods when they were delivered to it, and the reasonable value of the goods in their damaged condition when returned to the plaintiff. This evidence, when considered by a jury, would permit such a finding if it also found the necessary issue of negligence.

This, then, brings us to the question of negligence.

There is evidence which tends to prove that the parts were in good condition when delivered to the defendant, except only that their appearance was bad due to the scale, which could be removed under established methods. The defendant undertook to remove the scale in the normal conduct of his own business.

An expert witness testified to three different theories, one or more of which he said caused the damage to the product. The burden of proving negligence, of course, rests on the plaintiff in cases of this kind. Sometimes, however, the very nature of the injury may itself afford prima facie proof of negligence, when consideration is given to circumstances from which a jury might have drawn inferences unfavorable to the defendant.

A plaintiff is not always required to point out the precise act of which, or omission of duty by which, the negligence consists. Where the damage to property is one which, in the ordinary course of events, would not have happened but for the want of ordinary care in a failure to perform the work on the property in a skillful and workmanlike manner, under an express or implied agreement that the work would be so performed, a prima facie case is made; and it is then incumbent upon the defendant to show that he took the precautions and exercised the skill of an ordinarily prudent person engaged in the same or similar business.

Persons or companies holding out as specialists in their respective fields are presumed to know the nature and character of the work they do, and the results likely to follow a negligent or unskillful performance by them. They promise impliedly to employ the skill of their art, and it is their duty to do so.

We are of the opinion that the plaintiff made a prima facie case, and if the court directed the verdict on that ground, it committed prejudicial error.

In conclusion, and epitomizing some of the above discussion, we hold:

(1) The court erred in excluding the proffered evidence tending to prove the reasonable value of the articles in their various stages of handling.

(2) The court erred in holding that a prima facie case of negligence had not been shown.

(3) The court erred in holding that the plaintiff could not maintain the action, and in its refusal to permit an amendment to the plaintiff's petition to conform to the proof.

Judgment reversed and cause remanded for a new trial. Reversed and remanded.

STEVENS, PJ, MIDDLETON, J, concur.