THOMAS ET AL. *v.* CONNALLY, D. B. A. CONNALLY INSURANCE
AGENCY.

(No. 5874—Decided July 2, 1974.)

South Euclid Municipal Court.

*Dworken & Bernstein Co., L. P. A.* and *Mr. David Dworken,* for plaintiffs.
*Miss C. Ellen Connally,* for defendant.

GOLDSMITH, Acting Judge. Plaintiffs initiated this action claiming that the defendant, an insurance agent, had sold Mrs. Thomas, then known as Mrs. Widner, and her ex-husband, Mr. Widner, a homeowners policy for the period March 11, 1969 to March 11, 1972, and that thereafter the defendant, without consent of the plaintiffs, renewed their coverage under a standard fire insurance policy which did not include coverage for liability, damage to personal property, or theft. Their complaint alleges that on May 14, 1973, Mr. Thomas's automobile was stolen and later found; that missing from said automobile was various baseball equipment and fishing tackle. Plaintiffs further allege that their loss of the baseball equipment would have been compensated by insurance had the defendant renewed their homeowners insurance coverage, but that by issuing

a standard fire policy, they were not covered. Plaintiffs further claim that the reasonable value of the stolen baseball and fishing equipment was $500 and seek this amount in damages against defendant.

Defendant's answer denies that defendant was without authority to write a standard fire policy, and further states that the plaintiffs had actual knowledge of the change in coverage. Defendant further states that the plaintiffs were gratuitious bailees as to the baseball equipment and that any claim for the alleged stolen fishing equipment should have been made under plaintiffs automobile insurance comprehensive policy, if any. Defendant's answer further denies the theft and the items allegedly stolen for lack of knowledge or belief. It was stipulated by counsel before trial, that based on the Answers to Interrogatories propounded to Mr. Thomas, specifically interrogatory No. 30, that the maximum amount of damages could not exceed $335.

## I.
## Findings of Fact

Mrs. Thomas having been previously married to a Mr. Widner, she and her ex-husband had purchased a homeowners policy for a number of years from the defendant, which policy covered unscheduled personal property "owned or *used by* the insured" (emphasis added). The last homeowners policy which they purchased from him covered the period of March 11, 1969 to March 11, 1972. Apparently Mrs. Thomas did not inform the defendant of her divorce from Mr. Widner and her new marriage to Mr. Thomas until April 12, 1971. This is of little significance in that there was a change endorsement written on the homeowners policy in effect at that time, the date of that endorsement being June 28, 1971. Plaintiffs denied being told that a different type of policy was being issued beginning March 11, 1972. Defendant in turn did testify that he went to the home and talked to Mr. Thomas about it personally, who denies ever meeting the defendant before. Evidence submitted by defendant included a memorandum to Mrs. Thomas and her ex-husband warning them that the gutters

on the front of the house were in need of repair, and that the (insurance) company would be inspecting it again shortly. Also admitted into evidence was a transmittal letter from the defendant to the plaintiffs dated February 29, 1972, which stated in part as follows:

"Enclosed please find your Motorist Mutual Fire Insurance Policy No. F63.271465 covering your home. Please read your policy carefully, and if you have any questions, feel free to call me."

Defendant alleges that this was actual notice to the plaintiffs of the policy change.

## II.

### Discussion

In the opinion of the court, there are three issues to be resolved. The first has two sub-parts: (a) Were Mr. and/or Mrs. Thomas the true owners of the baseball equipment thereby giving them standing to sue the defendant; and (b), was Mr. Thomas merely a gratuitous bailee, and if so, would this prohibit him from bringing suit as to the bailed goods. The evidence showed that Mr. Thomas was the manager of an amateur baseball team. He purchased bats, baseballs and other equipment for the team, the cost of which was to be shared by all members of the team. He was not reimbursed because the equipment was stolen before he asked for reimbursement. Since it is a well-settled principle that a bailee has rights as against third persons to recover possession or to maintain an action for conversion (*Everett* v. *Farmers Bank Co.* [App. 1923], 1 Ohio Law Abs. 685; *State, ex rel. Maher,* v. *Baker* [1913], 88 Ohio St. 165, 102 N. E. 732; and *Southworth Heat Treating Co.* v. *Cleveland Metal Cleaning Corp.* [1955], 102 Ohio App. 398, 130 N. E. 2d 851), the court sees no real importance as to whether the plaintiffs were the actual owners of the goods or their bailee. The court, however, finds that Mr. Thomas was the actual owner of the baseball equipment since in order for a bailment relationship to exist, the members of the team would have first had to reimburse him for the equipment.

The second issue is whether the plaintiffs were justi-

fied in believing that the renewal policy would be the same as their prior policy, thus entitling them to a reformation of the insurance contract. The court finds that the defendant failed to give actual notice to the plaintiffs of the change of policy, in that his memo dated February 29, 1972, transmitting the new policy was not actual notice to the plaintiffs of the policy change. The court finds that a reformation of the standard fire policy is equitably in order, and that it be reformed to provide coverage for the loss in question, based on the decision in *Humboldt Fire Ins. Co.* v. *R. K. LeBlond Machine Tool Co.* (1917), 96 Ohio St. 442, 118 N. E. 121, and in *J. R. Roberts & Son* v. *National Ins. Co. of Cincinnati* (Portage County, 1914), 2 Ohio App. 463, wherein at page 470 it was stated:

"* * * [We] think it is clear from the authorities that where there is a renewal of a policy without anything being said by the parties as to a change in its conditions, the agreement is implied that the new policy shall be upon the same terms and conditions as the former one."

Having decided the two legal issues presented, the court must discuss the third and final issue which is factual: What was the reasonable value of the stolen goods at the time of the theft? On this issue, the court finds conflicting testimony. In the interrogatories, Mr. Thomas stated that the goods were purchased more than one year before the theft, but on cross examination testified that the answer was in error. Further, the police report, offered and submitted into evidence, showed a total value of $50 for the baseball equipment and another $50 for the fishing tackle, although Mr. Thomas stated on cross-examination that he did not know how the Police Department arrived at its figures. The court finds that reasonable minds can come to different conclusions as to an opinion of value, and in its opinion finds the reasonable value of the goods to be $150, and judgment in that amount is rendered on behalf of the plaintiffs against defendant.

*It is so ordered.*