**RIVER SERVICES COMPANY, Plaintiff,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.**

No. C 76–231 Y.

United States District Court,
N. D. Ohio, E. D.

July 17, 1977.

2. In view of this ruling, the Court does not reach the issue of the maintainability of this case as a class action.

Edward J. Brzytwa, Cleveland, Ohio, for plaintiff.

Marvin L. Karp, Cleveland, Ohio, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LAMBROS, District Judge.

### INTRODUCTION

Plaintiff, River Services Company, is a corporation licensed to do business in the State of Ohio and is engaged in the business of storing and transferring petro-chemicals. Defendant, Hartford Accident and Indemnity Company, is a corporation duly organized and existing under and by virtue of the laws of the State of Connecticut with its principal place of business in that state.

An action entitled *Coastal Tank Lines, Inc. v. River Services Company, et al.,* bearing civil docket No. 76 CIV 804 in the Court of Common Pleas of Columbiana County, Ohio, has been brought alleging that on February 10, 1976, while petro-chemicals were being loaded into two tank trucks, which were owned by Coastal Tank Lines, Inc., at the premises of plaintiff, a fire occurred which destroyed those two tank trucks.

The action before this Court is brought by plaintiff seeking a declaratory judgment that under a Manufacturer's and Contractor's Liability Policy issued to plaintiff by defendant on January 7, 1976, defendant has a duty to defend plaintiff against the claim in case No. 76 CIV 804 and is responsible under the insurance policy for any liability of plaintiff to Coastal Tank Lines, Inc. for the accident on February 10, 1976. Defendant denies any liability under the policy on the basis that both a "care, custody and control" exclusion and an explosion exclusion in the policy operate to remove the fact situation alleged by Coastal Tank Lines, Inc., from the coverage of the policy. Defendant has counterclaimed for reformation of the policy.

### FINDINGS OF FACT

Plaintiff and defendant first entered into an insurance contract for a manufacturers' and contractors' schedule liability policy on January 7, 1958. This insurance contract was to run from that date to January 7, 1961. This insurance contract was subse-

quently renewed for periods of coverage extending from Jan. 7, 1961 to Jan. 7, 1964; from Jan. 7, 1964 to Jan. 7, 1967; from Jan. 7, 1967 to Jan. 7, 1970; from Jan. 7, 1970 to Jan. 7, 1973; from Jan. 7, 1973 to Jan. 7, 1976; and from Jan. 7, 1976 to Jan. 7, 1979.

The relevant "care, custody and control" exclusion is set forth in the most recent coverage part in section I. under the heading "Exclusions" in part (k)(3) and states in pertinent part:

This insurance does not apply: . . . to *property damage* to . . . property in the care, custody or control of the *insured* or as to which the *insured* is for any purpose exercising physical control. (Emphasis original).

Earlier policy provisions contained the same language in part (j)(3) of "Exclusions."

The relevant language regarding the explosion hazard is found in the most recent coverage part in section I. under the heading "Exclusions" in part (r)(1) which states:

This insurance does not apply: . . . to *property damage* included within: the *explosion hazard* in connection with operations identified in this policy by a classification code number which includes the symbol "X." (Emphasis original).

The term "explosion hazard" is defined in the general policy provisions, Form 8117. An earlier policy provision Form 6115 also addressed the explosion exclusion under the heading "Exclusions" in part (L)(1) stating in relevant part:

This policy does not apply: . . . under coverage B, with respect to division I of the Definition of Hazards, to injury to or destruction of any property arising out of (I) blasting or explosion, other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment.

The language propounding the "care, custody and control" exclusion was included in the original insurance contract and in every renewal thereafter. Whether the explosion exclusion was included or was intended to be included in the original or renewed policies has been a subject of dispute.

The first liability policy on plaintiff's business, effective from 1958 to 1961, had a classification code number without an "X", and specifically stated that it was not subject to exclusion L–1. Thus, the explosion exclusion did not apply, and explosions of the nature normally excluded under exclusion L–1 were covered by this policy.

The two renewal policies effective from 1961 to 1967 had a classification code number with an "X", but specifically stated that they were not subject to exclusion L–1. Whether plaintiff received policy provisions form 6115 containing exclusion L–1 or general policy provisions form 8117 with these renewal policies is not clear from the evidence adduced at trial. Nonetheless, the potential conflict between apparent exclusion of explosion coverage on the face of the renewal policy through use of the "X" and the apparent inclusion of coverage for explosion on the face of the policy stating the policy is not subject to the L–1 exclusion creates, at best, considerable ambiguity as to explosion coverage.

From 1967 to 1976, the renewal policies in effect all had an "X" after the classification code number and made no reference to "exclusion L–1."

The most recent renewal of the policy, effective from 1976 to 1979, was given to plaintiff with the code classification number 5085A. This was a typographical error for what defendant had intended to be code number 50851x.

Plaintiff's premiums from 1958 through the present time have fluctuated, but bore no direct relation to any other changes in renewed policies. Plaintiff could not have surmised, by premium changes alone, that significant changes had been made in the coverage of the policy.

Moreover, plaintiff did not agree to any of the changes as to explosion coverage. Plaintiff was not aware of defendant's later actions in renewal policies to exclude explosion coverage.

### CONCLUSIONS OF LAW

*Choice of Law*

██ Generally, it has been held that in the area of insurance contracts the law of

the state where the contract was made is controlling. *John Hancock Mutual Life Ins. Co. v. Yates,* 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936); *Hartford Accident & Indemnity Co. v. Delta & Pine Land Co.,* 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, 92 A.O.R. 928, reh. den. 292 U.S. 607, 54 S.Ct. 772, 78 L.Ed. 1468 (1934). Ohio adheres to the general rule and considers the place of the making—particularly the place of delivery and the place of payment of the first premium—as largely determinative of the law to be applied. *Sun Life Assur. Co. of Canada v. Secoy,* 72 F.Supp. 83 (N.D.Ohio 1947); *Equitable Life Ins. Co. of Iowa v. Gerevick,* 50 Ohio App. 277, 197 N.E. 923 (Court of Appeals of Ohio, Muskingum County 1934). In this matter, the insurance agent is located in Ohio and the purchaser of the insurance is located in Ohio. Negotiations for purchase of the insurance took place in Ohio. The insurance policy was delivered to the purchaser in Ohio. The operations of the purchaser covered by the liability policy are primarily in Ohio. Thus, both the place of the making of the policy and performance upon the policy are in Ohio, and the law of Ohio is applicable to the matters raised in this action.

*Care, Custody and Control*

Customarily, when one speaks of something being in the care, custody or control of another,[1] reference is had to a legal relationship akin to that of ownership, tenancy, or bailment. *American Casualty Company v. Timmons,* 352 F.2d 563 (6th Cir. 1965); *Innis v. McDonald,* 150 N.E.2d 441 (Ohio Court of Common Pleas, Franklin County 1956), affirmed 150 N.E.2d 447 (Ohio Court of Appeals, Franklin County 1956).

In the instant case, the care, custody and control exclusionary language was chosen by the insurer. By its very nature, the language chosen does not specifically set forth what is to be excluded and is inherently ambiguous. See *Bigelow-Liptak Corp. v. Continental Ins. Co.,* 417 F.Supp. 1276 (E.D.Mich.1976).[2] The care, custody and control exclusion is broad-based and subject to various reasonable interpretations. Plaintiff maintains access to property for a limited purpose should not be construed as having care, custody, or control. Defendant maintains that supervision over the property coupled with the necessity of the property for the work involved constitutes being within care, custody, or control.

Both plaintiff's and defendant's interpretations of the "care, custody or control" exclusionary clause as it may apply to the particular facts and circumstances surrounding the work activity of this insured plaintiff are reasonable and based upon arguably correct case law and inferences. Neither plaintiff's nor defendant's interpretation of the "care, custody or control" exclusion as it applies to the facts in this action is an unreasonable forced interpretation of the words of the policy. See *Morfoot v. Stake,* 174 Ohio St. 506, 190 N.E.2d 573 (1963).

Rather than constituting a phrase of established legal significance in the insurance field, the "care, custody or control" exclusion has been viewed with increasing disfavor as a phrase of uncertain legal implications often operating, to the dismay of the insured, to substantially decrease an insured's expected coverage through the

---

1. Throughout this opinion, the Court will refer to the disputed exclusionary language as "care, custody or control" not unmindful of the fact that the clause in question also includes the language "or as to which the insured is for any purpose exercising physical control." Almost all the decisions referred to by the Court in this opinion have contained the language relative to "physical control," and in this opinion all references to the disputed "care, custody and control" clause are intended to be references to the full clause as it appears in the policy.

2. In Ohio, the "care, custody or control" exclusion has been held to be inherently ambiguous because of the many interpretations the word "property" may be given as applied to real property. *Harris, Jolliff & Michel, Inc. v. Motorists Mut. Ins. Co.,* 21 Ohio App.2d 81, 255 N.E.2d 302 (Court of Appeals, Union County 1970); *Innis v. McDonald, supra.* The words care, custody and control are equally susceptible to varying interpretations as applied to personalty.

broad application of a non-specific exclusion. Cf. *Bigelow-Liptak Corp. v. Continental Ins. Co., supra; Gulf Oil Corp. v. James E. Dean Marine Divers, Inc.,* 323 F.Supp. 679 (E.D.La.1971).

■ An exclusion must be stated clearly in explicit wording setting forth with specificity exactly what is to be excluded. *American Financial Corp. v. Fireman's Fund Ins. Co.,* 15 Ohio St.2d 171, 239 N.E.2d 33 (1968); *Jerger v. Commercial Ins. Co.,* 4 Ohio Misc. 43, 211 N.E.2d 99 (Court of Common Pleas, Richland County 1965); *Travelers Ins. Co. v. Auto-Owners (Mutual) Ins. Co.,* 1 Ohio App.2d 65, 203 N.E.2d 846 (Court of Appeals, Franklin County 1964); *Innis v. McDonald, supra; Home Indemnity Co. v. Village of Plymouth,* 146 Ohio St. 96, 64 N.E.2d 248 (1945).

■ The Court must adopt the construction of the insurance contract which most nearly corresponds with the intention of the parties as ascertained from the words employed by them in their plain, ordinary and usual meaning. *Essex House v. St. Paul Fire and Marine Insurance Co.,* 404 F.Supp. 978 (S.D.Ohio 1975). An insured is entitled to rely upon the ordinary meaning of what he reads in the policy, and should not be expected to understand the nuances of "care, custody, and control" or similar terms. See *Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc.,* 66 N.J.Super. 478, 169 A.2d 509.

An insurer should have knowledge of and familiarity with the business in which the insured is engaged. If the insurer wanted to exclude certain liability incident to the insured's business, such as damage to trucks or barges loading or unloading at plaintiff's facility, it should have done so clearly in the policy rather than seeking to achieve such an exclusion by taking refuge in generalities. Cf. *Gulf Oil Corp. v. James E. Dean Marine Divers, Inc., supra.* If the insurer intended to exclude such liability it could have done so in precise unambiguous language. *Innis v. McDonald, supra.* An exclusion of certain liability coverage in an insurance policy substantially affecting the coverage of the insured should be spelled out with far less ambiguity than in the "care, custody, and control" provision in the policy. Cf. *Bigelow-Liptak Corp. v. Continental Ins. Co., supra.*[3]

■ Within an insurance contract, any ambiguity as to the extent of coverage of the insurance policy, particularly where such ambiguity is in words chosen by the insurer, must be liberally construed most favorably to the insured. *Chavers v. St. Paul Fire & Marine Insurance Co.,* 295 F.2d 812 (6th Cir. 1961); *Essex House v. St. Paul Fire & Marine Insurance Co., supra; American Financial Corp. v. Fireman's Fund Ins. Co., supra; Jerger v. Commercial Ins. Co., supra; Travelers Ins. Co. v. Auto-Owners (Mutual) Ins. Co., supra.* Any reasonable interpretation of the policy resulting in coverage of the insured must be adopted by the trial court in Ohio. *Ollier v. Continental Casualty Co.,* 441 F.2d 792 (6th Cir. 1971); *Essex House v. St. Paul Fire & Marine Insurance Co., supra; Butche v. Ohio Casualty Insurance Company,* 174 Ohio St. 144, 187 N.E.2d 20 (1962). Where the choice is between depriving the insured of a substantial portion of his coverage through operation of an exclusion clause or permitting a broader coverage, the interpretation must be in favor of the insured to provide the broader coverage. *Travelers Ins. Co. v. Auto-Owners (Mutual) Ins. Co., supra.*

■ Accordingly, the Court finds that the "care, custody and control" exclusion of the insurance policy that is the subject of this action is not applicable to and does not exclude liability of the insurer for damage to trucks being loaded at plaintiff's facility.

*Explosion Exclusion*

■ The evidence shows that the original insurance policy entered into by the parties to this action did not include an explosion exclusion. In the case of renewal of a prior

---

**3.** It should be noted that while dealing with the law of Michigan, *Bigelow* relies upon both *Harris, Jolliff & Michel, Inc. v. Motorists Mut. Ins. Co., supra,* and *Innis v. McDonald supra* in considering the applicability of the "care, custody and control" provision.

policy, absent proof to the contrary, it is assumed that the renewal policy is to contain the same terms and conditions as the policy which is to be superseded. *J. R. Roberts & Son v. National Ins. Co.,* 2 Ohio App. 463, 21 O.C.C.N.S. 433, 35 O.C.C. 212, m. c. o. 13 O.L.R. 420 (Court of Appeals, Portage County 1914).

In the instant case, while the plaintiff clearly accepted various changes in premiums over several policy renewals, it is apparent plaintiff never agreed to any change in policy coverage. Plaintiff had no knowledge of the addition of the explosion exclusion. Acceptance of the changes in premiums does not, by itself, constitute acceptance of change in the policy coverage, where such change in coverage is substantial, plaintiff had no actual knowledge of the change in coverage, and the changes in premiums bore no obvious direct relation to the change in policy coverage.

The insured is not bound by new and more onerous provisions inserted in a renewed policy without his knowledge or consent. The insured has a right to assume that the terms of a renewed policy are substantially the same as those of the first policy, even if he should accept the new policy without examination. *J. R. Roberts & Son v. National Ins. Co., supra.*

As the first policy entered into between the parties to this action had no explosion exclusion, and as the explosion exclusion was later inserted by the defendant in subsequent renewal policies without the knowledge or consent of the plaintiff, the Court finds that the explosion exclusion is not properly part of the policy. Thus, notwithstanding the intentions of the defendant or defendant's underwriter, plaintiff is covered under the insurance policy for liability for those situations that would have been excluded under the explosion exclusion.[4]

## CONCLUSION

Neither the "care, custody and control" exclusion nor the explosion exclusion operate to relieve defendant of the duty to defend and the duty to pay for any judgment rendered against plaintiff in this action under the facts and circumstances alleged in civil action No. 76 CIV 804 in the Court of Common Pleas of Columbiana County, Ohio. The facts alleged in the Court of Common Pleas bring that action within the policy coverage; the insurer is therefore obligated to assume the defense of the action. *First National Bank of Akron v. Ohio Casualty Ins. Co.,* 101 Ohio App. 37, 137 N.E.2d 770 (Court of Appeals, Summit County 1953).

Accordingly, the Court grants plaintiff River Services Company declaratory judgment against defendant Hartford Accident and Indemnity Company and adjudges that the defendant is liable under its policy for the investigation and defense of the claim pending against River Services Company and for the payment of any judgment rendered against River Services Co. in civil action No. 76 CIV 804 in the Court of Common Pleas of Columbiana County, Ohio, and for all other payments and expenses incident to defense of and payment upon a claim which, if valid, would fall within the purview of the policy.[5]

IT IS SO ORDERED.

4. Defendant's counterclaim for reformation of the written policy to clearly include an explosion exclusion is therefore denied, as the explosion exclusion is not properly a part of the policy.

5. In its analysis of the "care, custody and control" exclusion, the Court recognizes the validity of such an exclusion to prevent an unintended expansion of coverage under liability insurance to include those matters more properly within the scope of property insurance. Thus, while the "care, custody and control" exclusion is clear and appropriate when applied to exclude from liability coverage personalty owned by the insured, personalty loaned to the insured, or personalty leased by the insured, it becomes more ambiguous and less appropriate in a fact situation such as that in the instant case, where failure to include within the policy coverage damage to a customer's vehicle incurred while loading at plaintiff's facility would, for all intents and purposes, deprive plaintiff of liability coverage for those activities that constitute the largest portion of plaintiff's business.