[Cite as *Villaos v. Nationwide Mut. Fire Ins. Co.*, 2020-Ohio-5123.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| MARGARET VILLAOS, | : | CASE NO. CA2020-04-004 |
| Appellant, | : | O P I N I O N<br>11/2/2020 |
| | : | |
| - vs - | : | |
| | : | |
| NATIONWIDE MUTUAL FIRE<br>INSURANCE COMPANY, | : | |
| | : | |
| Appellee. | | |

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2018-0550

The Reddy Law Firm, Brian Reddy, 427 W. Dussel Drive, Suite 266, Maumee, Ohio 43537, for appellant

Subashi, Wildermuth & Justice, Brian L. Wildermuth, Zachary J. Cloutier, The Green Town Center, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440, for appellee

**M. POWELL, P.J.**

{¶ 1}  Margaret Villaos appeals from the decision of the Brown County Court of Common Pleas, which granted summary judgment in favor of Nationwide Mutual Fire Insurance Company ("Nationwide") upon her breach of contract claim.  For the reasons that follow, this court affirms the common pleas court's decision.

{¶ 2}   In June 2015, Villaos was in Fayetteville, Ohio, soliciting business door-to-door on behalf of a power company.  While Villaos was standing at the front door of the residence of Christopher and Tonya Benoit, the Benoits' dog attacked her.  She suffered significant injuries.

{¶ 3}   At the time of the incident, the Benoits had a homeowner's insurance policy with Nationwide.  Nationwide advised the Benoits that it would not defend or indemnify them from claims arising from the incident because of a dog liability exclusion within the policy that excluded coverage for any dog that had a prior history of causing bodily harm.  Nationwide indicated that its investigation revealed that the Benoits' dog had previously injured the Benoits' son.

{¶ 4}   Villaos sued the Benoits.  Approximately one year later, the Benoits confessed judgment in Villaos' favor in the amount of $175,000.  As part of the agreement to confess judgment, Villaos agreed not to pursue the judgment against the Benoits and the Benoits assigned to Villaos any claims they may have against Nationwide with respect to their homeowner's insurance policy.

{¶ 5}   Villaos then sued Nationwide, asserting a claim for breach of contract.  Villaos pled that the Benoits' homeowner's insurance policy contractually obligated Nationwide to defend and indemnify her personal injury claim.

{¶ 6}   Nationwide moved for summary judgment.  In support, Nationwide filed the Benoits' depositions and the affidavit of Marc Pagan, Nationwide's Product Compliance Consultant Manager.  Nationwide argued that it was entitled to judgment as a matter of law because the dog liability provision excluded coverage under the policy.  In this regard, the Pagan affidavit indicated that Nationwide had added the dog liability exclusion to the Benoits' policy in 2003.  Pagan further averred that the Benoits were contemporaneously notified of the addition of the exclusion through the mail, and that the dog liability exclusion

remained a part of the contract of insurance in 2015 when the Villaos incident occurred.

{¶ 7} In opposing summary judgment, Villaos argued that there was a genuine issue of fact as to whether Nationwide properly notified the Benoits of the exclusion. Villaos pointed to the Benoits' deposition testimony, in which they denied any knowledge of the exclusion and denied ever having seen communications from Nationwide alerting them to the change in their policy. In particular, Tonya Benoit testified that she was the only person in the household who opened the mail and that she had never seen the 2003 notice concerning the exclusion.

{¶ 8} A magistrate considered Nationwide's motion for summary judgment. The magistrate found that the Benoits' policy did not initially include a dog liability exclusion but that the policy had been amended in 2003 to include the exclusion. The magistrate found that the Benoits denied any recollection of receiving notice of the policy amendment but that Pagan's affidavit reflected that notices of the amendment were mailed to the Benoits "at least five times" and that the notices were "never returned." The magistrate additionally noted that Villaos had asked the court to reform the policy language to include coverage. The magistrate denied this request, indicating that Villaos had presented no facts or case law demonstrating entitlement to reformation. Finding that the policy amendment excluded coverage for Villaos' personal injuries occasioned by the dog attack, the magistrate issued a decision granting summary judgment in favor of Nationwide.

{¶ 9} Villaos objected to the magistrate's decision. The court overruled the objection and adopted the magistrate's decision. With respect to the notice issue, the court found that the Benoits did not deny receiving notices of changes to their homeowner's insurance policy, only that they had no recollection of receiving them. The court further agreed that the language of the dog liability exclusion was clear and excluded coverage. With respect to Villaos' request for reformation, the court found no valid reason to support

the court rewriting the parties' contract to avoid a hardship. Villaos appeals, raising two assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE.

{¶ 12} Villaos argues the court erred in granting summary judgment because a genuine issue of fact exists as to whether Nationwide properly notified the Benoits of the addition of the dog liability exclusion. Nationwide argues that no notice was necessary. Alternatively, Nationwide argues that it provided proper notice of the policy amendment.

{¶ 13} An appellate court reviews a trial court's summary judgment decision de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co., Ltd.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124, ¶ 16. In applying the de novo standard, the appellate court uses the same standard that the trial court should have used and examines the summary judgment evidence to determine whether as a matter of law no genuine issues exist for trial. *Bravard v. Curran*, 12th Dist. Butler No. CA2003-01-009, 2004-Ohio-181, ¶ 9.

{¶ 14} Civ.R. 56 sets forth the summary judgment standard and requires that (1) there be no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there are no genuine issues of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 15} In response, the nonmoving party "may not rest on the mere allegations of his pleading, but * * * by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio

St.3d 383, 385 (1996). In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.,* 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10.

{¶ 16} Villaos argues that Nationwide was obligated to send the Benoits a "separately attached and conspicuous notice" alerting them to the dog liability exclusion. Villaos contends that both Benoits testified that they did not recall seeing the 2003 notice and that Tonya's testimony was unequivocal that she had never seen the 2003 notice. Villaos further contends that because Tonya was the only person in the household who opened the mail, the issue of whether the Benoits received proper notice of the dog liability exclusion was a genuine issue of fact for trial.

{¶ 17} Initially, Nationwide contends that the Benoits were not entitled to notice of the policy change. Instead, Nationwide submits that the Benoits contractually agreed, in the homeowner's insurance policy, that notice was not required. In this regard, Nationwide states that all of its policy forms contain language indicating that the policy is effective for the policy period and can be "continued in force as long as the premiums required [were] paid, *subject to the rules and forms then in effect*." (Emphasis in original.) Nationwide argues that due to this language, the Benoits agreed to be subject to the rules set forth in the policy form in effect at the time of Villaos incident, regardless of whether they were ever notified of the dog liability exclusion.

{¶ 18} However, the law is clear that "[i]nsureds are entitled to assume that the terms of a renewal insurance policy are the same as the terms of their original policy unless they have notice to the contrary. An insurer's changes in coverage are invalid and unenforceable unless the insurer provides notice of the changes to its insured." *Allstate Ins. Co. v. Croom*, 8th Dist. Cuyahoga No. 95508, 2011-Ohio-1697, ¶ 7, citing *Smith v. Speakman*, 10th Dist. Franklin No. 08AP-211, 2008-Ohio-6610, citing *Kasakaitas v. Floering*, 6th Dist. Lucas No.

L-91-209, 1992 WL 55416 (Mar. 20, 1992). "'[W]here there is a renewal of a policy without anything being said by the parties as to a change in its conditions, the agreement is implied that the new policy shall be upon the same terms and conditions as the former one.'" *Croom* at *id.*, quoting *Progress Properties, Inc. v. Reliance Ins. Co.*, 8th Dist. Cuyahoga No. 48992, 1985 WL 7977 (Apr. 18, 1985), in turn quoting *J.R. Roberts & Son v. Natl. Ins. Co.*, 2 Ohio App. 463 (7th Dist.1914).

{¶ 19} "The insured is not bound by new and more onerous provisions inserted in a renewal policy without his knowledge or consent." *Croom* at ¶ 11, citing *Allstate Ins. Co. v. George P. Zampedro*, 11th Dist. Trumbull No. 3247, 1983 WL 6040 (Dec. 30, 1983), in turn citing *River Servs. Co. v. Hartford Acc. Indemn. Co.*, 449 F.Supp. 622 (N.D.Ohio 1977). "Knowledge may be imputed to the insured, if the notice was presented in such way as to call attention to any material change in the terms of the contract." *Croom* at ¶ 12, citing *Zampedro.* "The issuance of the policy alone, or instructions to carefully read the policy, does not constitute adequate notice." *Id., Zampedro*, in turn citing *Thomas v. Connally*, 43 Ohio Misc. 5 (M.C. 1974). "However, notice is sufficient if it is provided in 'a separately attached and clearly worded letter describing the modifications.'" *Id.* citing *Zampedro.* Accordingly, Nationwide was obligated to separately notify the Benoits of new exclusions added to the policy form.

{¶ 20} Nationwide alternatively argues that the summary judgment record establishes that it provided the Benoits with proper notice of the dog liability exclusion. Through the Pagan affidavit, Nationwide set forth the history of policies and notices sent to the Benoits. Pagan averred that Nationwide first issued a homeowner's insurance policy to the Benoits in 2001, which was the "Elite II" policy form. The "Elite II" policy form did not contain a dog liability exclusion. Following the issuance of this first policy, the Benoits renewed their Nationwide homeowner's insurance policy on an annual basis for the next

thirteen years.

{¶ 21} During this time, Nationwide modified, or substituted, the Benoits' homeowner's insurance policy form several times. The first modification was in 2003. Pagan averred that on May 20, 2003, Nationwide sent to the Benoits, via regular U.S. mail, a policy change document ("2003 notice"). The 2003 notice is eight pages and is addressed to the Benoits' home address. It is titled IMPORTANT CHANGES TO YOUR HOMEOWNER COVERAGE – PLEASE READ. It contains a description of various changes to the Benoits' Elite II policy form, including the addition of a "dog liability exclusion," which would exclude coverage for "[a]ny dog with a prior history of causing bodily injury." The 2003 notice further indicated that the Benoits' homeowner's insurance policy had been reissued, that the new policy would replace the old policy, and that the Benoits would receive a copy of the new policy in the mail. In this respect, Pagan averred that in 2003, Nationwide sent to the Benoits, via U.S. regular mail, a copy of the new policy form, titled "HO 34."

{¶ 22} In 2004, Nationwide replaced policy form "HO 34" with policy form "HO 34-A." The dog liability exclusion remained the same in both forms. From 2004 to 2011, the Benoits' policy form remained the same, i.e., the "HO 34-A" policy form.

{¶ 23} In 2011, Nationwide replaced policy form "HO 34-A" with policy form "HO 34-B." In 2012, Nationwide sent a renewal package to the Benoits' address. The package contained a declaration page as well as a copy of the HO 34-B policy form. A separate notice was also included that indicated some changes to the policy. In relevant part, the notice informed the Benoits that the "dog liability exclusion was clarified" and indicated that they should review the new language.

{¶ 24} In 2013, Nationwide replaced policy form "HO 34-B" with policy form "HO 34-C." HO 34-C also contained the dog liability exclusion. Again, a renewal packaged

- 7 -

containing the policy form was mailed to the Benoits' address.

{¶ 25} In 2014, the Benoits again renewed their homeowner's insurance policy, which was unchanged since the prior change to the HO 34-C policy form. This renewal was for the period beginning in July 2014 and ending in July 2015. Thus, as of the date of Villaos incident – June 6, 2015 – the Benoits were covered under a Nationwide policy form that contained the dog liability exclusion.

{¶ 26} Upon review, this court finds that Pagan's affidavit establishes that Nationwide mailed the Benoits separate and clearly worded notices alerting them to the dog liability exclusion. First, Nationwide established mailing of the 2003 notice. Second, Nationwide established mailing in 2012 of a notice referring to changes to the existing dog liability exclusion and recommended that the Benoits review the new language. Additionally, the evidence indicated that Nationwide mailed the Benoits four different policy forms that all contained the dog liability exclusion language, which they could have read if they chose.

{¶ 27} In Ohio, the "mailbox rule" is a rebuttable presumption that a letter that is mailed is presumed to be received in due course. *Cantrell v. Celotex Corp.*, 105 Ohio App.3d 90, 94 (1st Dist.1995), citing *Young v. Bd. of Review*, 9 Ohio App.2d 25 (3d Dist.1967). "The presumption is not easily overcome, and is reinforced where the envelope in question was actually received in the mails." *Young* at 27. Pagan's affidavit unequivocally establishes that Nationwide mailed the various notices to the Benoits' home address. Thus, Pagan's affidavit gives rise to a presumption that the notices were received by the Benoits in due course.

{¶ 28} Villaos argues that the Benoits' deposition testimony rebuts this presumption and creates a genuine issue of fact as to whether the Benoits received notice. During his deposition, Christopher testified that Tonya was the person in the household who opened and reviewed the mail and that he never reviewed it unless it was something important that

she shared with him. He did not recall ever seeing the 2003 notice. He did recall receiving a thick packet from Nationwide, "the yearly policy one." He could not say he had seen these "thick" packets every year, but he knew that he had seen them on some years.

{¶ 29} Tonya claimed that the only Nationwide homeowner's insurance policy document that she could recall reviewing was the original policy form issued to them in 2001. She believed Christopher's recall of "thick" packets were the separate automobile policy renewals from Nationwide.

{¶ 30} Tonya denied ever having seen the 2003 notice. However, her testimony was equivocal as to whether she received other mailings from Nationwide, alternately claiming never to have seen other mailings or could not recall having seen them. With regard to the 2012 renewal package, which contained the notice about the dog liability language being "clarified," Tonya said she did not know if documents like the renewal package had been sent to them. With regard to the 2013 renewal package, Tonya again testified that she did not remember receiving it but indicated that the declarations page appeared familiar. Tonya generally agreed that the declarations pages looked familiar in form and content.

{¶ 31} Tonya did not deny ever receiving policy renewal packages from Nationwide, only that "I can't say whether or not I did." Finally, Tonya claimed that there were some issues with her mail service, i.e., that her mail would sometimes be delivered to a neighbor with a similar address who would not forward it to her.

{¶ 32} Based upon a careful review of the depositions, this court finds that the Benoits' testimony did not rebut the presumption that the notices were mailed and received in due course. Pagan's averments concerning the mailing of the various notices were unequivocal and unrebutted. In contrast to Pagan's affidavit averments, Tonya's deposition testimony was equivocal and internally inconsistent, when she at times denied receipt of the notices and at other times denied recollection of receiving or having seen them.

Critically, not having seen the notices or recalling their receipt does not equate with not receiving the notice.

{¶ 33} Tonya's testimony concerning issues with the mail service at her home also is insufficient to rebut the presumption. Tonya could only speculate that some notices may have been misdelivered. Without more, the proposition that every notice sent by Nationwide for 15 years could have been lost or misdelivered is too unrealistic on its face to create a fact issue. Consequently, this court finds that the summary judgment record establishes that Nationwide provided notice to the Benoits of the dog liability exclusion. Villaos did not meet her reciprocal burden of establishing a genuine issue of fact for trial on the issue of notice. This court overrules Villaos' first assignment of error.

{¶ 34} Assignment of Error No. 2:

{¶ 35} THE TRIAL COURT ERRED IN FINDING THAT THE POLICY SHOULD NOT BE REFORMED.

{¶ 36} Villaos contends that the court should not have denied her request to reform the Benoits' homeowner's insurance policy until such time that a factfinder determined the issue of whether the Benoits' were provided proper notice of the dog liability exclusion. Reformation is an equitable remedy that permits a court to modify the language in a contract where the parties' true intentions have not been expressed because of "mutual mistake," i.e., a common mistake by all the parties to the contract. *Wells Fargo v. Mowery*, 187 Ohio App.3d 268, 2010-Ohio-1650, ¶ 24. Generally, reformation only applies to mutual mistakes, not unilateral mistakes. *Butler Cty. Bd. of Commrs. v. Hamilton*, 154 Ohio App.3d 454, 474 (12th Dist.2001).

{¶ 37} However, courts have held that insurance contracts may be reformed or rescinded where there is a unilateral mistake that affects the insurance policy to such an extent that the contract is not "a correct integration of the agreement of the parties." *Ryan*

*v. Nationwide Ins. Co.*, 8th Dist. Cuyahoga No. 03032005, 2005-Ohio-885, ¶ 13, citing *Snedegar v. Midwestern Indemn. Co.*, 44 Ohio App.3d 64, 69 (10th Dist.1988). In this vein, courts have held that where an insurer fails to provide proper notice to an insured of a change in a renewal policy, and the insured is justified in believing that the renewal policy contains the same terms as the original policy, a court may equitably reform the renewal policy to provide coverage. *Thomas*, 43 Ohio Misc. 5 at 8, citing *Humboldt Fire Ins. Co. v. R. K. LeBlond Machine Tool Co.*, 96 Ohio St. 442 (1917); *J. R. Roberts*, 2 Ohio App. 463.

{¶ 38} This court agrees with Villaos' general proposition, i.e., that the lower court would first need to find that Nationwide failed to provide proper notice of the dog liability exclusion before determining whether to grant the equitable remedy of reformation. Here, however, the court determined that Nationwide had provided proper notice, which decision this court has affirmed on appeal. Accordingly, the issue of whether Villaos was entitled to reformation became moot and the lower court did not commit error in including an additional finding that Villaos was not entitled to reformation. This court overrules Villaos' second assignment of error.

{¶ 39} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.