AUTOTRONIC SYSTEMS, INC., Respondent, v AETNA LIFE AND CASUALTY et al., Appellants.

Third Department, November 10, 1982

APPEARANCES OF COUNSEL

*Carter, Conboy, Bardwell, Case & Blackmore* (*Dianne Bresee Mayberger* of counsel), for Aetna Life and Casualty, appellant.

*Lewis, Bell & Niles* (*John L. Bell* of counsel), for Maryland Casualty Co., appellant.

*Fitzpatrick, Bennett, Trombley & Lennon, P. C.* (*Edward J. Trombley* of counsel), for respondent.

OPINION OF THE COURT

CASEY, J.

Plaintiff designed, manufactured, constructed and installed a self-service gasoline filling station in Lake Placid, New York, for Schmidt Sales, Inc. The installation was completed in the spring of 1971 and the station was thereafter operated by Schmidt Sales, Inc. On December 2, 1977, one Kathryn Jones, an employee of Schmidt Sales, Inc. from June, 1971 to January, 1976, commenced an action against plaintiff, alleging that, as a result of plaintiff's negligence and breach of warranties in the equipment, design and construction of the filling station, she had sustained serious permanent injuries due to exposure to toxic substances in the leaded gasoline sold at the station. The Jones action was commenced by the service of the summons alone, with the complaint being served in June, 1978.

Plaintiff's general liability insurance carrier at the time the action was commenced was defendant Maryland Casualty Company (Maryland), whose policy had been in effect since January 1, 1975. Prior thereto, defendant Aetna Life and Casualty (Aetna) had provided plaintiff with general liability insurance. Plaintiff promptly notified Maryland of the action, and Maryland, through its attorneys, initially appeared on behalf of plaintiff. After receiving the complaint, however, Maryland disclaimed upon the basis of an exclusion in its policy and upon the ground that the injuries forming the basis for the Jones action occurred before the effective date of the policy issued by Maryland. Aetna received notice of the Jones action in August, 1978 and thereafter disclaimed on the basis of the same exclusion as that asserted by Maryland, and upon the ground that

plaintiff had failed to give Aetna prompt notice of the action.

Plaintiff commenced the instant action, seeking a declaratory judgment declaring that both Maryland and Aetna are obligated to defend plaintiff in the Jones action. Defendants moved for summary judgment and plaintiff cross-moved for similar relief, alleging that the exclusion relied on by both defendants was inapplicable and that they should be estopped from disclaiming by virtue of their delay in so doing. Special Term denied defendants' motions and granted plaintiff's cross motion. These appeals ensued.

The exclusion relied upon by defendants is required by subdivisions 13 and 14 of section 46 of the Insurance Law, and excludes from coverage "bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental".

■ The purpose and scope of this statutorily required exclusion was recently considered by the Appellate Division, Fourth Department, in *Niagara County v Utica Mut. Ins. Co.* (80 AD2d 415, mot for lv to app dsmd 54 NY2d 831). The court concluded (at p 418) "that the pollution exclusion clause, mandated by statute, was intended to apply only to actual polluters". We agree. The clear purpose of the statutorily required exclusion is to strengthen New York's environmental protection standards by imposing the full risk of loss due to personal injury or property damage from pollution upon the commercial or industrial enterprise that does the polluting and by eliminating the enterprise's option of spreading that risk through insurance coverage (see NY Legis Ann, 1971, pp 353-354; McKinney's Session Laws of NY, 1971, p 2633). This purpose would not be served by applying the exclusion to insureds who are not engaged in the industrial or commercial activity that produce the pollution, although their acts of commission or omission may have resulted in bodily injury or property damage arising out of pollution.

Plaintiff herein is not the actual corporate polluter to which the statutory exclusion was intended to apply. The pollution-causing commercial activity that is the subject of the underlying tort action is the day-to-day operation of the gasoline filling station, an activity in which plaintiff was not involved, either directly or indirectly. Plaintiff's role in designing, constructing and installing the service station was a limited one. Although its actions are alleged to have caused bodily injury arising out of pollution, plaintiff's role was not such that it should be precluded, by application of the statutory exclusion, from spreading its risk of loss through liability insurance. Since defendants have failed to "demonstrate that the allegations of the [Jones] complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation" (*International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 325), defendants are obligated to defend. Having so concluded, we need not reach the question of whether the allegations of the Jones complaint fall within the "sudden and accidental" exception to the exclusion (see *Allstate Ins. Co. v Klock Oil Co.,* 73 AD2d 486).

■ Defendant Maryland has also disclaimed on the ground that the injuries alleged in the Jones complaint manifested themselves before the effective date of Maryland's policy. The Jones complaint alleges that she was exposed to certain toxic substances throughout her employment with Schmidt Sales, Inc., and that "[o]n or about October, 1974, and thereafter, plaintiff experienced increasing pain, discomfort, agony and disablement throughout her body". These allegations can reasonably be read as asserting that while the injuries first manifested themselves in October, 1974, the continued exposure to toxic substances thereafter, including the period from January 1, 1975, when defendant Maryland's policy became effective, until Ms. Jones' employment terminated, aggravated existing injuries or caused additional injuries. Defendant Maryland is, therefore, obligated to defend.

■ Aetna also disclaimed upon the ground that it did not receive timely notice of the underlying tort claim, although it has not argued this issue on appeal. We conclude that

Special Term properly rejected this contention. The policy required notice "as soon as practicable", which has been held to be an "elastic" phrase calling "for a determination of what was within a reasonable time in the light of the facts and circumstances of the case at hand" (*Mighty Midgets v Centennial Ins. Co.*, 47 NY2d 12, 19). Only when the complaint in the Jones action was served did it become readily apparent that defendant Aetna was on the risk during the period when some or all of the injuries first manifested themselves. Since Aetna received notice within two months of the time the Jones complaint was served, we conclude that notice was given "as soon as practicable".

Having concluded that the grounds advanced by defendants for disclaimer are without merit, we need not pass on plaintiff's contention that defendants are precluded from disclaiming by their undue delay in so doing. The order directing defendants to defend plaintiff in the action by Kathryn Jones should be affirmed.

The order should be affirmed, with costs.

KANE, J. P., MAIN, WEISS and LEVINE, JJ., concur.

Order affirmed, with costs.