DRAGE ET AL., APPELLANTS, *v.* MANTIFEL; ALLSTATE INSURANCE COMPANY, APPELLEE.

(No. 53753—Decided May 16, 1988.)

*Wincek & Martello Co., L.P.A.,* and *Joseph C. DeRosa,* for appellants.

*Fillo, Ristau & Drain* and *Nicholas J. Fillo,* for appellee Allstate Insurance Company.

ANN MCMANAMON, J. Appellants, William and Marcelene Drage, were injured when an auto in which they were driving was struck head-on by a vehicle which veered left of center on West 150 Street in Cleveland. The Drages brought a negligence action against the other driver, John Mantifel, who responded that he had been forced over the center line by a third vehicle which struck his auto and fled the scene. In an amended complaint, the Drages brought a claim against their insurance company, appellee Allstate Insurance Company ("the insurer"), seeking, *inter alia,* a declaration of their right to coverage under two policies of uninsured motorist insurance.

After the jury returned a verdict

for Mantifel, both the insurer and the Drages moved for summary judgment. The trial court granted the insurer's motion on the ground that coverage was precluded by policy provisions requiring physical contact between a hit-and-run vehicle and the insured's auto.

In a timely appeal, the Drages raise two assignments of error which posit, respectively, that the trial court erred in granting summary judgment for the insurer and in refusing to grant their motion for summary judgment. Because we find the first assignment well-taken, we reverse the judgment of the trial court.

Both of the insurer's policies provided coverage against hit-and-run drivers. The Drages' personal policy defined a "hit-and-run vehicle" as follows:

"* * * [A]n uninsured auto is 'a hit-and-run' motor vehicle which causes bodily injury to a person injured by physical contact with the insured or with a vehicle occupied by that person. The identity of either the operator or the owner of the vehicle must be unknown."

At the time of the accident, the Drages were driving an auto owned by Marcelene Drage's employer. The vehicle was insured under a policy which defined an "uninsured auto" to include:

"* * * a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an insured, a covered auto or a vehicle an insured is occupying."

According to the deposition testimony of John Mantifel, the alleged hit-and-run vehicle collided with his car and caused him to cross the center line of the roadway. It is undisputed, however, that the offending vehicle did not directly strike the auto carrying the Drages. The Drages argue, alternatively, that their indirect contact with the unidentified vehicle satisfied the physical-contact requirement, and that the insurer's restriction is in derogation of R.C. 3937.18, Ohio's uninsured motorist statute. The insurer contends these arguments are foreclosed by a line of Supreme Court cases beginning with *Travelers Indemnity Co.* v. *Reddick* (1974), 37 Ohio St. 2d 119, 66 O.O. 2d 259, 308 N.E. 2d 454.

In *Travelers,* the claimants' vehicle was struck by an auto which had swerved to avoid contact with an unidentified motorist who thereafter fled from the scene. The unidentified auto did not collide with either vehicle. As in the case at bar, the uninsured motorist policy required "physical contact" between the vehicles driven by the insured and the unidentified driver.

The Ohio Supreme Court rejected the claimants' arguments that the denial of coverage conflicted with public policy and the terms of the insurance contract. Construing the physical-contact requirement, the court commented, at 122, 66 O.O. 2d at 261, 308 N.E. 2d at 456:

"We find nothing uncertain or ambiguous about the words used in this policy to define 'hit-and-run vehicle,' or to establish the requirement of 'physical contact.' Giving the wording of the policy its natural and reasonable construction, the only conclusion to be reached is that the policy does not provide coverage for injuries sustained by reason of the tortious operational conduct by drivers of unidentified vehicles, in the absence of at least a minimal contact between such a vehicle and the insured or the vehicle he is occupying. The rubric 'hit-and-run vehicle,' encompassing a 'hit,' as well as a 'run,' further buttresses the express prerequisite of a 'physical contact.' Were we to accept the construction urged by appellants, we would be disregarding the words 'physical con-

tact' and 'hit-and-run vehicle,' and allowing recovery under the 'hit-and-run' portion of the uninsured motorist provision whenever unidentified vehicles 'proximately cause' an automobile accident to occur."

The court found no inconsistency with the policy of R.C. 3937.18. Because the statute does not require insurers to offer coverage against hit-and-run drivers, the court reasoned, the insurer's restriction was permissible and served to prevent fraudulent claims. *Id.* at 124, 66 O.O. 2d at 262, 308 N.E. 2d at 457.

In *Progressive Cas. Ins. Co.* v. *Mastin* (1982), 4 Ohio App. 3d 86, 4 OBR 167, 446 N.E. 2d 817, the Court of Appeals for Hamilton County distinguished *Travelers* under a set of facts analogous to the case at bar. In *Mastin*, an unidentified vehicle collided with a taxi cab, which in turn struck the insureds' auto. The appellate court affirmed a summary judgment for the insureds, finding they had established physical contact within the meaning of the policy.

The *Mastin* court reasoned that *Travelers* was distinguishable since the unidentified vehicle in that case did not strike either of the other autos. Thus, *Travelers* did not address the scenario where physical contact, albeit indirect, had actually occurred. *Mastin, supra,* at 88, 4 OBR at 169-170, 446 N.E. 2d at 819-820.

The court opined that the term, "physical contact," was susceptible to more than one meaning, and that the insurer's construction would lead to absurd results if enforced. As an example, the court hypothesized that a hit-and-run vehicle could strike a signpost, propelling it into an insured's auto. Under the insurer's interpretation of the provision, the injured motorist would be denied coverage. The *Mastin* court concluded that the interpretation urged by the insureds more accurately

comported with the common meaning of "hit-and-run" while still preserving the corroborative value of the contact requirement.

The insurer contends *Mastin* is inconsistent with the Supreme Court's subsequent pronouncements in *Yurista* v. *Nationwide Mut. Ins. Co.* (1985), 18 Ohio St. 3d 326, 18 OBR 370, 481 N.E. 2d 584, and *State Auto. Mut. Ins. Co.* v. *Rowe* (1986), 28 Ohio St. 3d 143, 28 OBR 238, 502 N.E. 2d 1008. We disagree.

In *Yurista,* the court considered appeals of two cases construing a physical-contact restriction. In the first case, appellee Yurista was injured when his motorcycle struck a railroad tie which had earlier been dragged into the road by a turning automobile. The second case, *Basford* v. *State Auto. Mut. Ins. Co.* (1985), 18 Ohio St. 3d 326, 18 OBR 370, 481 N.E. 2d 584 (case No. 84-1890), involved a motorist who was struck in the head by a pop bottle tossed from the window of an unidentified auto.

Both appellate courts recognized there was no physical contact between the vehicles. The *Basford* court affirmed a judgment for the insurer on this ground, but the *Yurista* court declined to enforce the provision and instead adopted a corroborative-evidence standard.

The Supreme Court, finding that *Travelers* was dispositive of both cases, held that where a policy provision requires physical contact between the hit-and-run and the insured's vehicles, "such physical contact must occur for the 'hit-and-run' inclusion to apply." *Yurista,* syllabus.

The court reaffirmed *Travelers* in *Rowe, supra,* where, as in *Travelers,* the insureds were struck by an auto which had swerved and missed the unidentified vehicle. The court reiterated that the physical-contact

provision was not at odds with R.C. 3937.18. *Id.* at syllabus.

The Drages' argument that the contact requirement contravenes R.C. 3937.18 is clearly foreclosed by *Travelers* and its progeny. If public policy does not demand that an insurer provide any hit-and-run protection at all, we see no reason why an insurer may not attach restrictions to coverage it chooses to offer.

A more difficult issue is posed by the Drages' contention that their accident satisfied the physical-contact provision of the policies. It is well-settled that if language in an insurance policy has a common and ordinary meaning, courts will not resort to construction unless that meaning would lead to an absurd result. *Olmstead* v. *Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St. 2d 212, 216, 51 O.O. 2d 285, 288, 259 N.E. 2d 123, 126. However, while a court may not re-write the parties' contract, *Hedrick* v. *Motorists Mut. Ins. Co.* (1986), 22 Ohio St. 3d 42, 44, 22 OBR 63, 64-65, 488 N.E. 2d 840, 842, any ambiguities must be construed against the insurer. *Yeager* v. *Pacific Mut. Life Ins. Co.* (1956), 166 Ohio St. 71, 1 O.O. 2d 204, 139 N.E. 2d 48; *Travelers, supra.*

We find none of the Supreme Court cases discussed above to be controlling in this case. In *Travelers,* the issue was limited to whether the claimants had demonstrated physical contact in the absence of any contact whatsoever between the vehicles. We do not read *Travelers* as contemplating a situation in which physical contact was accomplished through an intermediate vehicle.

The factual scenarios addressed in *Yurista* are similarly inapposite. The *Yurista* court summarily determined that no physical contact between the vehicles had occurred in either case. We infer that in both cases the relationship between the claimant's injury and the offending vehicle, was too at-tenuated to characterize the second impact as physical contact emanating from an unidentified vehicle. Indeed, the court opined that imposing coverage in Yurista's appeal would be to substitute a proximate cause standard for the policy language. *Id.* at 330, 18 OBR at 373, 481 N.E. 2d at 587.

However, this case does not involve objects thrown from a car window or left in the roadway. The issue before us is whether the term "physical contact" is ambiguous in that it may reasonably be construed to include an unidentified motorist's indirect physical contact with the insured in a chain reaction with an intermediate vehicle.

We believe the plain meaning of the term permits this construction. While, as explained in *Travelers,* the language may serve to alert an insured that an impact is required, the terminology does not inform of the additional requirement that the physical contact be direct. The appellate court in *Mastin* aptly noted that a direct-contact restriction could lead to absurd results. In the case at bar, the insurer's interpretation means, in effect, that although Mantifel was victimized by a hit-and-run driver, the Drages were not. Although *Rowe, supra,* may permit the insurer to impose this restriction without offending public policy, the insurer must do so without ambiguity.

We note that the insurer's rationale for the physical-contact limitation — the need for corroborative evidence — is preserved by our interpretation. While the record suggests that physical evidence of the initial impact between Mantifel and the unidentified driver may have been obliterated in the subsequent collision with the Drages, this problem would also inhere with a direct-contact requirement. For instance, if Mantifel, rather than the Drages, were asserting a right to cov-

erage, there would likewise be no physical evidence of a hit-and-run motorist.

Accordingly, we hold that when a hit-and-run driver collides with an intermediate auto which, as a result, strikes the insured's vehicle, the insured has sustained "physical contact" within the meaning of an uninsured motorist insurance policy.

Although this is a case of first impression in this district, our decision is consistent with the overwhelming majority of cases decided by courts in other states which have considered the issue. See Annotation (1969), 25 A.L.R. 3d 1299 and Supplement; 12A Couch on Insurance 2d (1981) 170, Section 45:643 and Supplement.

Especially pertinent are those cases decided without the benefit of a statute requiring coverage against hit-and-run vehicles. These courts, so far as we can determine, are unanimous in construing "physical contact" to include contact through an intermediate vehicle. See, *e.g., Anderson* v. *State Farm Mut. Auto. Ins. Co.* (1982), 133 Ariz. 464, 652 P. 2d 537; *State Farm Mut. Auto. Ins. Co.* v. *Spinola* (C.A. 5, 1967), 374 F. 2d 873 (construing Florida law); *Hartford Acc. & Indemn. Co.* v. *Le Jeune* (1986), 114 Ill. 2d 54, 499 N.E. 2d 464; *Springer* v. *Government Emp. Ins. Co.* (La. App. 1975), 311 So. 2d 36; *Lord* v. *Auto-Owners Ins. Co.* (1970), 22 Mich. App. 669, 177 N.W. 2d 653; *Latham* v. *Mountain States Mut. Cas. Co.* (Tex. App. 1972), 482 S.W. 2d 655.

Moreover, it appears that many of the jurisdictions which recognize intermediate contact are consistent with *Travelers, supra,* in affirming denial of coverage when no physical contact occurs at all. See, *e.g., State Farm Mut.*

*Auto. Ins. Co.* v. *Brudnock* (1986), 151 Ariz. 268, 727 P. 2d 321; *Country Mut. Ins. Co.* v. *Kosmos* (1983), 116 Ill. App. 3d 914, 452 N.E. 2d 547.

We thus conclude the trial court erred in granting the insurer's motion for summary judgment. However, there was no error in the court's refusal to grant summary judgment for the Drages. We cannot say that John Mantifel's deposition testimony would permit reasonable minds to conclude only that he was in fact struck by a hit-and-run driver. See Civ. R. 56(C). Since there remains a material issue of fact, this case must be remanded for trial on the merits.

Finally, we reject the Drages' contention that the insurer was estopped from denying coverage by its actions in handling their claim. The Drages point out that nearly two years passed before the insurer formally denied their claim in November 1985. The Drages further contend they were misled when the insurer agreed, in May 1985, to arbitrate the claim.

This argument ignores the significance of the litigation between the Drages and Mantifel which was commenced in October 1984. This litigation, combined with the uncertain state of the applicable law, left the rights of the parties in doubt. The Drages, who were at all times represented by an attorney, thus cannot maintain they were misled by the insurer.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded for further proceedings.

*Judgment reversed and cause remanded.*

KRUPANSKY and DYKE, JJ., concur.