**PARK–OHIO INDUSTRIES, INC., et al., Plaintiffs,**

v.

**The HOME INDEMNITY COMPANY, Defendant.**

**No. 1:90CV1046.**

United States District Court, N.D. Ohio, E.D.

Aug. 6, 1991.

Harold Madorsky, Marvin L. Karp, Ulmer & Berne, Cleveland, Ohio, for plaintiffs.

Steven G. Janik, David L. Lester, Janik, Lester & Dunn, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Park–Ohio Industries, Inc. ("Park–Ohio"), an Ohio corporation, and its wholly-owned subsidiary Tocco, Inc. ("Tocco"), an Alabama corporation, commenced this declaratory judgment action seeking to establish defendant The Home Indemnity Co.'s ("Home") duty to defend and indemnify Tocco against all claims asserted against it in the ongoing litigation of *Fleenor v. Goodyear Tire & Rubber Co.*, No. 15,705 (Morris Co. Texas), a products liability personal injury and wrongful death suit. Diversity jurisdiction is alleged, pursuant to 28 U.S.C. § 1332, as Home's principal place of business is New York. Upon consideration of the parties' cross-motions for summary judgment, this Court grants Home's motion for summary judgment and denies Park–Ohio's and Tocco's motion.

### I.

Park–Ohio purchased a comprehensive general liability policy from Home, through Frank B. Hall & Co. of Ohio, Inc., for $378,222, effective February 1, 1988. This policy covered Park–Ohio and Tocco for damages arising from any product that the insureds produced, subject to the terms, conditions and exclusions contained in the policy.

William B. Fleenor and 47 other individuals instituted an action against Tocco and other entities alleging that certain induction furnaces manufactured by Tocco caused injuries, disabilities and deaths to past and present employees of the Red River army depot in Bowie, Texas, where these furnaces were being used. The Fleenor plaintiffs claim that Tocco's furnaces, used to strip and burn rubber from the metal tracks of army tanks and armored personnel and missile carriers, were defective, unreasonably dangerous and not reasonably fit for their intended use. Tocco's furnaces were used in a procedure, commonly referred to as the rubber de-nuding process, which is "designed and intended to break the bond between the rubber tread and metal components of the tracks of the

tanks and armored personnel and missile carriers." Fleenor plaintiffs' first amended petition, p. 8. The tracks of these "vehicles were reassembled with rubber tread molded back onto the metal components," at the depot. *Id.* In addition, the employees of the rubber branch rebuild roadwheels. *Id.* The Fleenor plaintiffs charge that

> During all of these operations, certain rubber combustion products resembling soot, smoke, fumes, dust pollutants and other particulates, evolve from the incomplete combustion of organic materials. These rubber combustion products contain compounds called polynuclear aromatic hydrocarbons including coal tar pitch volatiles and Benzo[a]pyrene which are carcinogenic agents.

> The burning of the rubber released these hazardous, dangerous and carcinogenic agents into the atmosphere which were then breathed, inhaled, absorbed or otherwise ingested by the "workers" employed in the rubber branch section. Nineteen (19) of the "workers" have died or presently are suffering from cancer as a result of exposure to these carcinogenic agents. Many more of the "workers" have suffered from a myriad of respiratory problems as a result of exposure to the carcinogenic agents.

*Id.* at 8–9.

In addition, the Fleenor plaintiffs claim that Tocco failed to adequately warn them that these furnaces emit into the atmosphere soot, smoke, fumes, dust, and other carcinogenic particulates.

Ohio–Park and Tocco notified Home of the *Fleenor* suit. Ohio–Park and Tocco filed this action seeking declaratory relief after Home disclaimed any duty to defend or indemnify Tocco. The parties have cross moved for summary judgment.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

■ The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

### III.

In *United States v. A.C. Strip*, 868 F.2d 181, 184 (6th Cir.1989), a case brought pursuant to diversity jurisdiction, the court recognized that "[i]n the absence of a provision to the contrary, a policy issued in Ohio is governed by Ohio law." (citing *Celina Mutual Ins. Co. v. Sadler*, 6 Ohio App.2d 161, 165–66, 217 N.E.2d 255 (1966)). The parties to this diversity action have made numerous references to Ohio law, without directly indicating that it is applicable. In light of the litigants references to Ohio law and the fact that the policy indicates that the Cleveland office of Frank B. Hall & Co. of Ohio produced the policy, this Court finds that Ohio law governs.[1]

At issue is whether the policy's pollution exclusion precludes coverage of the *Fleenor* litigation. Home contends that the policy specifically excludes injuries resulting from pollution. Park–Ohio and Tocco argue that "[s]uch a type of occurrence is *not* within the reasonably intended ambit of the pollution exclusion." Park–Ohio's brief, p. 7 (emphasis in original).

The rule that ambiguities in an insurance policy are "liberally construed in favor of the insured" has no application where "the language is clear." *United States v. A.C. Strip*, 868 F.2d 181, 185 (6th Cir.1989) (citing *Fuerstenberg v. Mowell*,

63 Ohio App.2d 120, 122, 409 N.E.2d 1035 (1978)). Ohio rejects the reasonable expectations doctrine which provides insurance coverage, in certain instances, even though a literal reading of the policy prescribes coverage. *Sterling Merchandise Co. v. Hartford Insurance Co.*, 30 Ohio App.3d 131, 506 N.E.2d 1192, 1196–97 (1986); *see also Northbrook Excess & Surplus Insurance Co. v. Procter & Gamble Co.*, 924 F.2d 633, 640 n. 8 (7th Cir.1991) (applying Ohio law). This rule is applied by some courts where the ordinary person would reasonably believe that the insured is covered under the policy. This "doctrine is based on principles which go far beyond the liberal rules of construction employed by Ohio courts" and "requires a court to rewrite an insurance contract which does not meet popular expectations." *Sterling*, 506 N.E.2d at 1196–97. Furthermore, "it is unnecessary and impermissible" for a court "to resort to construction" of the language of an insurance policy, when that language "has a plain and ordinary meaning." *Karabin v. State Automobile Mutual Insurance Co.*, 10 Ohio St.3d 163, 462 N.E.2d 403, 406 (1984). It is well settled that "an exclusion contained within a policy of insurance is valid, where such exclusion is stated clearly in explicit wording setting forth with specificity exactly what is to be excluded." *River Services Co. v. Hartford Accident and Indem. Co.*, 449 F.Supp. 622, 626 (N.D.Ohio 1977). In order to determine whether the pollution exclusion of the policy issued by Home to Park–Ohio is specific, this Court examines its text.

The policy provides that Home "will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of ... **bodily injury** ... to which this insurance applied, caused by an **occurrence**." Endorsement 7 of the policy specifies that the policy provides world wide coverage for occurrences arising out of the "products/completed operations hazard." An occurrence means "an accident, including continuous or re-

---

1. The Court notes that exhibit B to Home's motion for summary judgment includes a copy of the policy and a "deductible reimbursement agreement." The deductible reimbursement agreement provides that it is to be interpreted in accordance with New York law. That provision, however, does not impact the policy.

peated exposure to conditions, which result in **bodily injury** ... neither expected nor intended from the standpoint of the injured." The policy specifies that

"**products hazard**" includes **bodily injury** ... arising out of the **named injured's products** or reliance upon a representation or warranty made at any time with respect thereto, but only if the **bodily injury** or **property damage** occurs away from premises owned by or rented to the **named insured** and after physical possession of such products has been relinquished to others.

However, the policy contains an absolute pollution exclusion which states that the policy does not cover

... bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

The cross-motions center on the meaning of this exclusion provision. Home refers to pages eight and nine of the *Fleenor* plaintiffs' first amended petition where it is alleged that during the rubber de-nuding process

certain rubber combustion products resembling soot, smoke, fumes, dust pollutants and other particulates, evolve from the incomplete combustion of organic materials....

The burning of the rubber released these hazardous, dangerous and carcinogenic agents into the atmosphere which were then breathed, inhaled, absorbed or otherwise ingested by the "workers" employed in the rubber branch section.

Home contends that this policy specifically excludes the nature of the *Fleenor* suit form coverage. Park–Ohio argues that pollution exclusion provisions generally preclude coverage where the insured engages in polluting activities or the pollution occurs at the insured's place of business. Thus, Park–Ohio concedes that if the *Fleenor* complaint had alleged that Tocco's factory "was discharging or releasing smoke,

soot, vapors, gases, etc. into the atmosphere, which ... then caused bodily injury to the claimants, the exclusion relied upon by Home would be applicable." Park–Ohio's brief, p. 7. However, Park–Ohio maintains that the exclusion does not apply where Tocco manufactured a defective product which released soot and other particulates into the atmosphere injuring the *Fleenor* plaintiffs.

This Court finds that the pollution exclusion provision specifically precluded coverage where pollution caused damage. There is no ambiguity in the policy. Essentially, Park–Ohio is asking this court to apply the reasonable expectation doctrine which has been rejected by the Ohio courts. Park–Ohio's reliance on *Grinnell Mutual Reinsurance Co. v. Wasmuth*, 432 N.W.2d 495 (Minn.App.1988), therefore is disingenuous. Grinnell sought a determination as to whether the pollution exclusion contained in liability insurance policies issued to an insulation company precluded coverage for damage to a home and its occupants caused by formaldehyde emitted from deteriorating foam insulation sold and installed by the insulation company. *Id.* at 497. The foam deteriorated because of improper installation. *Id.* The court, while recognizing that a "careful examination of the policy provision would negate" the expectation of coverage, decided to consider the expectations of the parties and found that the ordinary reader would conclude that that policy did not limit coverage where damage was caused by the installation of building materials. *Id.* at 499.

While the factual scenario in *Grinnell* is directly on point, the outcome was predicated on the reasonable expectations doctrine, 432 N.W.2d at 499, which does not apply in Ohio. Consequently, this Court, in applying Ohio law, must find that the pollution exclusion clause applies despite any expectations of the insured.

Park–Ohio nevertheless insists that Home has a duty to defend the claims. This Court disagrees. As the circuit indicated in *Reliable Springs Co. v. St. Paul Fire & Marine Ins. Co.*, 869 F.2d 993, 994 (6th Cir.1989) (applying Ohio law), "[w]hile

the mere possibility of coverage may trigger an obligation to defend, such obligation is not without limitation. Where a claim is subject to a clear exclusion, there is no duty to defend." Having determined that Park–Ohio's claim is clearly excluded from coverage, this Court determines that Home has no duty to defend Park–Ohio.

### IV.

The Court, having determined that the pollution exclusion clause precludes coverage of the insured, therefore grants Home's motion for summary judgment and denies Park–Ohio's and Tocco's motion. Judgment is entered for the defendant.

IT IS SO ORDERED.