**PARK–OHIO INDUSTRIES, INC., and Tocco, Inc., Plaintiffs–Appellants,**

v.

**The HOME INDEMNITY COMPANY, Defendant–Appellee.**

**No. 91–3826.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 14, 1992.

Decided Sept. 22, 1992.

Rehearing and Rehearing En Banc Denied Nov. 9, 1992.

Marvin L. Karp (argued and briefed), Ulmer & Berne, Harold A. Madorsky, Cleveland, Ohio, for plaintiffs-appellants.

Steven G. Janik, David L. Lester (argued and briefed), Janik, Lester & Dunn, Cleveland, Ohio, for defendant-appellee.

Before: MERRITT, Chief Judge; and MILBURN and GUY, Circuit Judges.

MILBURN, Circuit Judge.

In this diversity action, plaintiffs Park–Ohio Industries, Inc. ("Park–Ohio") and its wholly-owned subsidiary, Tocco, Inc. ("Tocco"), appeal the district court's grant of summary judgment in favor of defendant Home Indemnity Co. ("Home") in their action seeking a declaratory judgment that Home has a duty to defend and indemnify Tocco against all claims asserted against it in the ongoing litigation of *Fleenor v. Goodyear Tire & Rubber Co.*, No. 15,705 (Morris Co., Texas), a product liability action for personal injury and wrongful death. This is a case of first impression because this is the first time a court has addressed the issue of a pollution exclusion as it applies to an alleged defective product placed in the stream of commerce by one insured under a policy of insurance containing a pollution exclusion.

On appeal, the sole issue is whether the district court erred in granting summary judgment for Home by concluding that the "pollution exclusion" provision in the defendant's insurance policy precluded any obligation on the part of Home to defend or to pay any judgment rendered against plaintiffs in the *Fleenor* case. For the reasons that follow, we affirm. 785 F.Supp. 670.

## I.

Plaintiff Park–Ohio purchased a comprehensive general liability policy from Home through Frank B. Hall & Co. of Ohio, Inc., effective February 1, 1988, to February 1, 1989. This policy covered Park–Ohio and Tocco for damages arising from any defective product that they as insureds produced, subject to the terms, conditions, and exclusions contained in the policy.

The material facts are undisputed. In January of 1989, William B. Fleenor and 47 other individuals instituted an action against Tocco and other entities alleging that certain induction furnaces manufactured by Tocco caused injuries, disabilities, and deaths to past and present employees of the Red River Army Depot in Bowie, Texas, where the Tocco furnaces were being used.[1] The *Fleenor* plaintiffs claim that Tocco's furnaces, used to strip and burn rubber from the metal tracks of army tanks and armored personnel and missile carriers, were defective, unreasonably dangerous, and not reasonably fit for their intended use. Tocco's furnaces were used in a procedure, commonly referred to as the rubber de-nuding process, which is "designed and intended to break the bond between the rubber tread and metal components of the tracks of the tanks and armored personnel and missile carriers." J.A. 136. The tracks of these "vehicles were reassembled with rubber tread being molded back onto the metal components" at the depot. *Id.* In addition, the employees of the rubber branch rebuild road wheels. *Id.* The *Fleenor* plaintiffs charge in relevant part that

[d]uring all of these operations, certain rubber combustion products resembling soot, smoke, fumes, dust pollutants and other particulates, evolve from the incomplete combustion of organic materials. These rubber combustion products contain compounds called polynuclear aromatic hydrocarbons including coal tar pitch volatiles and Benzo[a]pyrene which are carcinogenic agents.

The burning of rubber released these hazardous, dangerous and carcinogenic agents into the atmosphere which were then breathed, inhaled, absorbed or otherwise ingested by the "workers" employed in the rubber branch section. Nineteen (19) of the "workers" have died or presently are suffering from cancer as a result of exposure to these carcinogenic agents. Many more of the "workers" have suffered from a myriad of respiratory problems as a result of exposure to the carcinogenic agents.

\* \* \* \* \* \*

Plaintiffs would further show that Defendants breached express and implied warranties in that their products were not merchantable nor reasonably fit for their intended use. To the contrary, the heat systems were unmerchantable and unfit and Defendants' breach of the warranties, express and implied, proximately caused the injuries, disabilities or deaths of the "workers" and the Plaintiffs' resulting damages.

J.A. 136, 137, 143.

Park–Ohio and Tocco notified Home of the *Fleenor* action; however, Home informed plaintiffs in a letter dated October 26, 1989, that it would not defend Tocco in the *Fleenor* action or indemnify Tocco for any damages awarded against Tocco. Home based this determination on a "pollution exclusion" provision found in the insurance policy issued by Home to Park–Ohio. The pollution exclusion states that the policy does not cover

... *bodily injury or property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

J.A. 195.

Thereafter, on June 8, 1990, plaintiffs filed the present action in the district court. Both plaintiffs and defendant filed motions

---

1. The original action was filed June 24, 1988, but Tocco was not named as defendant until the complaint was first amended in January of 1989. Park–Ohio is not a party to the *Fleenor* action.

for summary judgment, and on August 6, 1991, the district court granted defendant's motion and entered summary judgment for the defendant. This timely appeal followed.

## II.

### A.

As earlier stated, the material facts in this case are not in dispute. Thus, this appeal involves solely a question of law which this court reviews de novo. *See Brooks v. American Broadcasting Cos., Inc.*, 932 F.2d 495, 500 (6th Cir.1991). *See also Salve Regina College v. Russell*, —— U.S. ——, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991) (a district court's interpretation of state law is reviewed de novo).

The parties agree that the applicable law in this case is Ohio law. In applying Ohio law, the district court determined that the pollution exclusion in issue is clear and unambiguous, and, according to Ohio rules of construction, the insurance policy precludes coverage for the injuries alleged by the *Fleenor* plaintiffs. The district court further concluded that where exclusion of coverage under an insurance policy is clear, then under Ohio law the insurer has no duty to defend the insured in an action against the insured.

The district court also rejected the conclusion of a Minnesota court in a case the district court considered to be "directly on point" because the Minnesota court applied the reasonable expectation doctrine in determining that the pollution exclusion at issue did not preclude coverage for the insured. *See Grinnel Mut. Reinsurance Co. v. Wasmuth*, 432 N.W.2d 495 (Minn. App.1988). In this case, the district court determined under *Sterling Merchandise Co. v. Hartford Ins. Co.*, 30 Ohio App.3d 131, 506 N.E.2d 1192, 1196–97 (1986), that the reasonable expectation doctrine does not apply in Ohio, and, according to Ohio's rules of construction, the pollution exclusion precluded coverage. We agree.

### B.

In Ohio, an insurance policy is a contract, and the parties' rights under the policy are purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 472 N.E.2d 1061, 1062 (1984) (per curiam). Both parties agree that under Ohio law, where a provision excluding coverage in an insurance policy is clear and unambiguous, the plain language of the exclusion provision applies. *See Moorman v. Prudential Ins. Co. of Am.*, 4 Ohio St.3d 20, 445 N.E.2d 1122, 1124 (1983) (per curiam); *United States v. A.C. Strip*, 868 F.2d 181, 185 (6th Cir.1989). Moreover, both parties also agree that where a provision is ambiguous, the provision is interpreted in favor of the insured. *Id.* In this case, the primary dispute is whether an ambiguity exists in the pollution exclusion in question.

As plaintiffs correctly assert, the burden is on the insurer to prove that a particular claim is precluded by an exclusion provision. *State Farm Fire & Casualty Co. v. Hiermer*, 720 F.Supp. 1310, 1314 (S.D.Ohio 1988), *aff'd*, 884 F.2d 580 (6th Cir.1989) (unpublished); *see also Moorman*, 445 N.E.2d at 1124 ("[W]here exceptions ... are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.").

In this case, plaintiffs argue that defendant has failed to meet its burden. According to plaintiffs, the pollution exclusion possesses a latent ambiguity which becomes visible when the pollution exclusion is applied to the specific facts in this case.

Pollution exclusions like the one at issue are common in the insurance industry today. *See, e.g., Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d Cir.1990); *Perkins Hardware Lumber Co. v. Bituminous Casualty Corp.*, 190 Ga.App. 231, 378 S.E.2d 407 (1989); *League of Minnesota Cities Ins. Trust v. City of Coon Rapids*, 446 N.W.2d 419 (Minn.App.1989).

Plaintiffs argue that it is unclear whether the pollution exclusion in this case should apply in products liability cases where the insured (1) was not actively engaged in the discharge of the pollutants at issue or (2) did not discharge the pollutants on its premises. According to plaintiffs, the pollution exclusion is clear and unambiguous *only* in those situations where the insured was *actively* engaged in polluting, e.g., an oil tanker dumping oil in the ocean, or where the discharge occurred on the premises of the insured, e.g., a chemical company emitting toxins into the air from its plant. Plaintiffs contend that because Tocco was neither engaged in actively discharging the pollutants at issue in the *Fleenor* litigation nor did the discharge occur on Tocco's premises, an ambiguity exists as to the application of the pollution exclusion in this case. Thus, plaintiffs argue that under the Ohio rule of construction, ambiguities are resolved in favor of the insured, and, therefore, the Home policy must provide coverage to plaintiffs for the injuries alleged in the *Fleenor* litigation.

Plaintiffs rely on two Ohio cases for the proposition that Ohio recognizes the concept of latent ambiguities. In *Drage v. Mantifel,* 49 Ohio App.3d 63, 550 N.E.2d 183, 187 (1988), the court determined that an insurance policy providing coverage to the insureds for injuries inflicted by a "hit and run" driver was ambiguous as applied to the facts in that case. *Id.* 550 N.E.2d at 187. In *Mantifel,* the insureds were injured when their vehicle was struck by another vehicle which had been forced into them by a third, "hit and run" vehicle. The policy defined a "hit and run" vehicle as a "vehicle which causes bodily injury to a person injured by physical contact with the insured or with a vehicle occupied by that person." *Id.* at 185. The court found that this definition was ambiguous as it applied to the indirect contact made by the third vehicle and construed the policy in favor of the insured. *Id.* at 187.

In *Moorman,* 445 N.E.2d at 1122, the plaintiff, who was insured under a major medical policy containing an exclusion provision denying coverage for "any treatment of the teeth," had several teeth crowned as part of her treatment for temporomandibular joint syndrome (TMJ), a misalignment of a joint located in the jaw. Because the teeth were crowned to correct a mispositioned jaw joint, a medical condition undisputedly covered by the policy, the court held that it was not clear whether the crowned teeth constituted treatment of the teeth or treatment of the jaw. *Id.* at 1124–25. Thus, the court held the exclusion provision was ambiguous and construed the policy in favor of the insured. *Id.*

While these cases illustrate that Ohio embraces the concept of latent ambiguities in an insurance contract, they do not support plaintiffs' argument that a latent ambiguity exists in this case. In the present case, the exclusionary provision precludes coverage for "the discharge, dispersal, release or escape of smoke, vapors, soot, fumes...." J.A. 195. The *Fleenor* plaintiffs allege they were injured by "certain rubber combustion products resembling soot, smoke, fumes, dust pollutants and other particulates" which were "released" into the atmosphere. J.A. 136, 137. There is no ambiguity in this situation. The pollution exclusion places no limitation on how the discharge is to be made or by whom. "The discharge" applies to any discharge, and there is nothing in the facts of this case which bring into question the meaning of "the discharge" or who must make the discharge. In a sense, the pollution exclusion follows the product, as do all the terms' of the policy.

Nevertheless, plaintiffs cite cases from other jurisdictions in support of their argument that a latent ambiguity exists in this case. According to plaintiffs, several other jurisdictions have interpreted virtually identical pollution exclusion provisions to apply only where the insured was actively engaged in polluting or where the pollution activities took place on the insured's premises. Plaintiffs also rely on an Ohio case to argue that because other jurisdictions have given a different interpretation to virtually identical pollution exclusion provisions, then the exclusion at issue in this case is ambiguous as a matter of law. In *Equitable Life Ins. Co. of Iowa v. Gerwick,* 50

Ohio App. 277, 197 N.E. 923, 925 (1934), a case involving an insurance policy providing coverage for "permanent and total" disability, the court stated that

> [w]here the language of a clause used in an insurance contract is such that courts of numerous jurisdictions have found it necessary to construe it and in such construction have arrived at conflicting conclusions as to the correct meaning, intent, and effect thereof, the question whether such clause is ambiguous ceases to be an open one.

■ To the extent that *Equitable Life Ins. Co.* held that a contract provision is ambiguous *as a matter of law* if other jurisdictions have interpreted similar provisions differently, that case, in our view, does not state the present law in Ohio. The Supreme Court of Ohio has held that "[w]hen the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this court to resort to construction of that language." *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St.3d 163, 462 N.E.2d 403, 406 (1984). If we were to accept plaintiffs' argument that a contract provision is ambiguous *as a matter of law* because other jurisdictions have chosen to apply a provision differently, then we would be rejecting a well-settled Ohio rule of construction to apply the plain language of the contract where that language is clear and unambiguous.

■ Plaintiffs also argue that the *purpose* behind the pollution exclusion supports their contention that the pollution exclusion should not apply in this case and rely on *Autotronic Systems, Inc. v. Aetna Life & Casualty*, 89 A.D.2d 401, 456 N.Y.S.2d 504 (3d Dep't N.Y.App.Div.1982). In *Autotronic*, the plaintiff had designed, manufactured, constructed, and installed a self-service gasoline filling station for a station operator. Several years later, an employee of the filling station sued the plaintiff alleging that due to the plaintiff's negligent design and construction of the filling station, she had suffered permanent injuries from exposure to toxic substances in the leaded gasoline sold at the station.

The plaintiff's insurance carrier disclaimed coverage based on an exclusionary provision almost identical to the one in the present case. The *Autotronic* court held that the exclusionary provision did not apply to the plaintiff because to hold otherwise would be contrary to the purpose of the exclusion provision. *Id.* 456 N.Y.S.2d at 505–06. The court held that

> [t]he clear purpose of the statutorily required exclusion is to strengthen New York's environmental protection standards by imposing the full risk of loss due to personal injury or property damage from pollution upon the commercial or industrial enterprise that does the polluting. . . .
>
> \*    \*    \*    \*    \*    \*
>
> Plaintiff herein is not the actual corporate polluter to which the statutory exclusion was intended to apply. The pollution-causing commercial activity that is the subject of the underlying tort action is the day-to-day operation of the gasoline filling station, an activity in which plaintiff was not involved, either directly or indirectly.

*Id.*

Based on *Autotronic*, plaintiffs argue that the *purpose* of the pollution exclusion in this case is also to strengthen environmental laws by excluding from coverage only those who "actively" pollute. Therefore, plaintiffs reason that because they did not "actively" pollute, the pollution exclusion was not meant to apply to them.

*Autotronic* is clearly distinguishable from this case. First, the *Autotronic* court was examining a pollution exclusion which was required by state law to appear in insurance contracts. *Id.* In determining the purpose of the pollution exclusion, the court examined the New York State Legislature's intent in mandating the provision. *Id.* 456 N.Y.S.2d at 506. However, in this case, there is no evidence that the pollution exclusion was statutorily required nor do plaintiffs make this argument. In this connection, simply because the New York Legislature might have had one purpose in using a particular provision does not mean

private parties had the same intention in using a similar provision.

Second, *Autotronic's* approach to the statutorily mandated pollution exclusion has been rejected by the Second Department, New York Appellate Division and by the New York Court of Appeals. In *Powers Chemco, Inc. v. Federal Insurance Co.*, 144 A.D.2d 445, 533 N.Y.S.2d 1010 (2d Dep't 1988) (per curiam), *aff'd*, 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989), the plaintiff purchased a parcel of land and later discovered that the property contained hazardous materials which required cleanup. The plaintiff sought a declaratory judgment that its insurer was required to indemnify it for the clean-up costs regardless of the statutorily mandated pollution exclusion. The court found that the pollution exclusion did preclude coverage stating,

> [w]e decline to follow the holding in *Autotronic.* . . . The clear and unambiguous language of the pollution exclusion makes no exception for pollution caused by someone other than the insured where that pollution is not "sudden and accidental".[2]

*Id.* 533 N.Y.S.2d at 1012.

The New York Court of Appeals affirmed the Appellate Division's decision in *Powers Chemco, Inc. v. Federal Ins. Co.*, 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989) (per curiam). In doing so, the New York Court of Appeals stated that

> [w]e . . . reject plaintiff's contention that since it was not the actual polluter, but merely inherited the problem from the prior landowner, the pollution exclusion clause cannot bar its present insurance claim. Simply put, there is nothing in the language of the pollution exclusion clause to suggest that it is not applicable when liability is premised on the conduct of someone other than the insured.

*Id.* See also State of New York v. Amro Realty Corp., 745 F.Supp. 832, 839

(N.D.N.Y.1990) ("It is clear that New York law requires courts to focus on the *type* of pollution occurrence alleged as opposed to the culpability of the insured.") (emphasis in original).

Plaintiffs also rely upon *United States Fidelity and Guaranty Co. v. Special Coatings Co.*, 180 Ill.App.3d 378, 129 Ill. Dec. 306, 311, 535 N.E.2d 1071, 1076 (1989), in which the court held that a pollution exclusion almost identical to the one in issue in this case was ambiguous. In *Special Coatings*, an insurance company sought a declaratory judgment that it had no duty to defend or indemnify an insured in an action brought under Illinois law alleging that the insured arranged for the disposal of its hazardous waste by a company which later improperly disposed of the waste. Under the Illinois Environmental Protection Act, Ill.Rev.Stat. Ch. 111½, pars. 1012, 1021, a party who arranges for the disposal of its hazardous waste by another can be held strictly liable for clean-up costs where the waste is disposed of improperly. Mindful of this strict liability, the court stated

> [c]ertainly, those engaged in manufacturing processes would be expected to have sought other or additional insurance had they known that the mere act of engaging an independent agency such as a waste disposal in the ordinary course of having industrial wastes removed from their property would result in the denial of insurance coverage.

*Id.*

Similarly, in *Molton, Allen and Williams, Inc. v. St. Paul Fire and Marine Ins. Co.*, 347 So.2d 95, 99 (Ala.1977), the court held that a pollution exclusion did not preclude coverage for the insured. The insured was a defendant in an action brought by a group of landowners who alleged that the insured, a real estate developer, had negligently caused sand and dirt to be deposited on their property. In

---

**2.** The pollution exclusion in *Powers Chemco* included a provision providing for coverage where the discharge of pollutants was "sudden and accidental." However, the *Powers Chemco* court determined that the "sudden and acciden-

tal" provision did not apply to the facts in that case. *Id.* 533 N.Y.S.2d at 1011. There is no "sudden and accidental" provision in the pollution exclusion at issue in this case.

refusing to apply the pollution exclusion, the court stated

> [t]he pollution exclusion was no doubt designed to decrease the risk where an *insured* was putting smoke, vapors, soot, ... irritants, contaminants or pollutants into the environment.

*Id.*[3] (emphasis added).

On the other hand, like the *Powers Chemco* courts, other courts have refused to accept the view that the pollution exclusion applies only where the insured was an active and immediate participant in the pollution activity at issue. In *Northern Ins. Co. of New York v. Aardvark Associates, Inc.*, 942 F.2d 189 (3d Cir.1991), the Third Circuit explicitly rejected the notion that the pollution exclusion exception is limited to active as opposed to passive polluters. *Id.* at 194. In *Northern Ins. Co.*, the insured hauled industrial waste created by other companies to disposal sites. When the Environmental Protection Agency began cleanup of these sites, it sought cleanup costs from the insured. The insured argued that because it did not produce the hazardous waste at issue, it was a "passive" polluter and that the pollution exclusion clause did not apply to passive polluters. The Third Circuit rejected this argument stating

> [w]e have scrutinized this language [of the pollution exclusion] for any hint that it is limited to "active" polluters or those who "actually release pollutants," but we find no ambiguity and no support for [insured's] argument. The clause unambiguously withholds coverage for injury or damage "arising out of *the* discharge, dispersal, release or escape" of pollutants, not merely the insured's discharge, dispersal, release or escape "of pollutants."

*Id.* at 194 (emphasis in original).

Likewise, in *Federal Ins. Co. v. Susquehanna Broadcasting Co.*, 727 F.Supp. 169, 177 (M.D.Pa.1989), *modified in part on other grounds*, 738 F.Supp. 896 (M.D.Pa. 1990), *aff'd*, 928 F.2d 1131 (3d Cir.) (Table), *cert. denied*, —— U.S. ——, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991), the court reached the same conclusion. In *Susquehanna Broadcasting Co.*, the insurer brought an action seeking a declaratory judgment that it had no duty to the insured to indemnify it for costs incurred in cleaning up a hazardous waste disposal site. The insured, who had hired an individual to haul and dispose of its wastes, argued that it was not an active polluter and that the pollution exclusion was ambiguous as applied to parties who were not active polluters. Based on this premise, the insured argued that the pollution exclusion should be strictly construed against the insured. The court flatly rejected this argument stating, "[t]he pollution exclusion makes no reference at all to active polluters or passive polluters." *Id.* at 177.[4] *See also United States Fidelity & Guar. Co. v. Murray Ohio Mfg. Co.*, 693 F.Supp. 617, 621 (M.D.Tenn.1988), *aff'd*, 875 F.2d 868 (6th Cir.1989) (the "common sense meaning" of the pollution exclusion contains no distinction between "active" and passive polluters), *aff'd*, 875 F.2d 868 (6th Cir.1989) (Table).

We hold that the analysis followed by the *Powers Chemco* courts, the *Northern Ins. Co.* court and the *Susquehanna Broadcasting Co.* court is the correct analysis in this case. In each of those cases, the courts declined to look outside the clear and plain language of the pollution exclusion. Moreover, this approach is also the analysis mandated by the rules of contract construction under Ohio law.

### C.

■ Plaintiffs next argue that the district court erred in rejecting the reasonable expectation doctrine. In their first brief,

---

**3.** The *Molton* court also held in the alternative that the pollution exclusion was ambiguous as applied to dirt and sand. It simply was unclear whether dirt or sand was an irritant, contaminant, or pollutant as enumerated in the pollution exclusion. *Id.* at 99. Thus, the court strictly construed the pollution exclusion against the drafter, the insurance company, and found that the pollution exclusion did not apply. *Id.*

**4.** The district court in *Susquehanna Broadcasting Co.* held that the insured did have a duty to indemnify on grounds unrelated to the issue in the present case.

plaintiffs state that we are bound only by the decisions of the Supreme Court of Ohio and that if there is no controlling law on the issue at hand, it is our duty to ascertain how the Supreme Court of Ohio would resolve the same issue now before us. Plaintiffs further argue that if the Supreme Court of Ohio did consider the reasonable expectation doctrine, it would embrace the doctrine. In support of this argument, plaintiffs state:

> The pole star of insurance contract interpretation in Ohio is that if a policy clause is ambiguous, Ohio courts will adopt "any [objectively] *reasonable* interpretation ... in favor of the insured. *Gomolka v. State Auto Mutual Ins. Co.*, 70 Ohio St.2d 166, 168, 436 N.E.2d 1347, 1348 (1982) (emphasis added). Thus, where the insured has a reasonable expectation of coverage, based entirely upon a "reasonable interpretation of the [ambiguous] policy," Ohio courts have adopted the insured's interpretation. *River Services Co. v. Hartford Acc. & Indem. Co.*, 449 F.Supp. 622, 626 (N.D.Ohio 1977). Consequently, there is no difference *in substance* between the Ohio rule of construction and the reasonable expectations doctrine as it has come to be applied in a majority of jurisdictions.

Appellants' Reply Brief at 9.

This argument is essentially a recapitulation of plaintiffs' meritless argument that because the pollution exclusion is ambiguous as applied to the facts in this case, the exclusion must be interpreted in favor of the insured. Under the reasonable expectation doctrine, "the reasonable expectation of the insured may be given effect even if careful examination of the policy provision would negate that expectation." *Grinnel Mut. Reinsurance Co. v. Wasmuth*, 432 N.W.2d 495, 499 (Minn.App.1988). Moreover, as the district court correctly concluded, Ohio has rejected the reasonable expectation doctrine.

In *Sterling Merchandise Co. v. Hartford Ins. Co.*, 30 Ohio App.3d 131, 506 N.E.2d 1192, 1197 (1986), the court stated that the reasonable expectation doctrine requires a court to rewrite an insurance contract which does not meet popular expectations. Such rewriting is done regardless of the bargain entered into by the parties to the contract. Such judicial activism has not been adopted in Ohio by its courts and the courts' use of the liberal rules of construction. Further, this court declines to do so.

Although *Sterling* is not a decision by the Supreme Court of Ohio, *Sterling* is persuasive when considered in conjunction with well-settled Ohio rules of construction. *See also Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble*, 924 F.2d 633, 639–40, n. 8 (7th Cir.1991) ("The reasonable expectations doctrine has been soundly rejected by Ohio courts...."). Accordingly, we believe that if the Supreme Court of Ohio were faced with the same issue as we are today, it would reject the reasonable expectation doctrine.

### D.

■ Plaintiffs also argue that the pollution exclusion in this case does not preclude coverage by Home because the *Fleenor* plaintiffs' claim against them asserts liability on the basis of "selling and manufacturing a defective product." According to plaintiffs, this claim is separate and distinct from the discharge of pollutants and thus is not excused by the pollution exclusion. This argument appears to be one of semantics. As the district court determined, regardless of how one characterizes the plaintiffs' claims, the manufacturing defect allegedly resulted in the discharge of pollutants, and the pollution exclusion provision precludes coverage for this activity. Just as we refuse to inject an active versus passive distinction into the clear language of the pollution exclusion, we likewise refuse to inject a defect versus discharge distinction into the pollution exclusion in this case.

### E.

■ Finally, the district court was correct in determining that Home has no duty to defend Tocco in the *Fleenor* litigation.

Under Ohio law, where it is clear, as it is in this case, that an insurance policy does not provide coverage for claims alleged against the insured, the insurer has no duty to defend the insured against those claims. See *Zanco, Inc. v. Michigan Mut. Ins. Co.*, 11 Ohio St.3d 114, 464 N.E.2d 513 (1984) (per curiam); *see also Reliable Springs Co. v. St. Paul Fire & Marine Ins. Co.*, 869 F.2d 993, 995 (6th Cir.1989).

### III.

For the reasons stated, the summary judgment of the district court is AFFIRMED.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

Although the case is a close one, I agree with Park–Ohio's characterization of the *Fleenor* action. The *Fleenor* complaint does not allege that Tocco's furnaces themselves created any pollution. Instead, the lawsuit alleges, *inter alia*, that Tocco is liable because Tocco knew that the depot would use the furnaces to burn rubber and Tocco failed to warn the workers about the hazards of burning rubber.[1]

I am aware of only three published decisions that have involved attempts to apply the pollution exclusion in similar contexts. In each of the three cases, the court refused to apply the pollution exclusion to claims against an insured who no longer controlled its product. In *Autotronic*, 456 N.Y.S.2d 504, the plaintiff-employee alleged that the insured was liable for negligently building the service station, while the actual polluting activity was the day-to-day operation of the service station. *Id.* at 506.

In *Grinnell Mutual Reinsurance Co. v. Wasmuth*, 432 N.W.2d 495 (Minn.Ct.App. 1988), the insured had installed home insulation that allegedly emitted irritating vapors. The court concluded that the insured would reasonably expect the pollution exclusion to limit coverage for activities such as hazardous waste dumping, not for installing building materials in a home. *Id.* at 499.

Finally, in *Continental Casualty Co. v. Rapid–American Corp.*, 177 A.D.2d 61, 581 N.Y.S.2d 669 (1992), the court held that the pollution exclusion could not be used to exclude product liability claims against the insured asbestos manufacturer. The court concluded that the pollution exclusion did not "embrace the harm inflicted by a product fully and finally launched into the stream of commerce, and over which the manufacturer no longer exercises any control." *Id.* 581 N.Y.S.2d at 673.

I find the reasoning of these cases persuasive. Home's reading of the pollution exclusion would allow insurers to avoid defending any product liability case that fortuitously involves smoke, soot, fumes, liquids, or vapors. For example, under Home's reading, the pollution exclusion would deny coverage to an automobile manufacturer for claims brought by motorists who had been injured, while in an automobile, by fumes from a defective exhaust system.

The title and the language of the exclusion belie such a reading. The title indicates that the exclusion applies only to "pollution," not to every claim involving smoke or fumes. The last clause of the exclusion states that the exclusion applies only to emissions "into or upon land, the atmosphere or any water course or body of

---

1. The *Fleenor* complaint alleges that Tocco and three other defendants manufactured induction furnaces that were used in the rubber denuding process. The plaintiffs allege that the furnace manufacturers are liable because the

> furnaces in question were defective, unreasonably dangerous and not reasonably fit for their intended use ... and that Defendants failed to adequately warn the "workers" ... of the risks known to Defendants in association with the use of the furnaces.... [D]efendants *failed to give adequate warning, training, or*

> *other instructional information concerning the emission into the atmosphere of soot, smoke, fumes, dust and other particulates, known or* such that should have been known ... to be carcinogenic and hazardous to the "workers'" health.... [T]he introduction into the stream of commerce of a defective product ... and the failure to warn ... rendered the furnaces unreasonably dangerous at the time it left Defendants' possession....

(Emphasis added).

water." This language suggests that the exclusion applies to damage done by the release of pollutants into the *environment*, not to the type of location exposure at issue in the *Fleenor* lawsuit and in *Autotronic, Wasmuth,* and *Rapid–American.*

Even if I did not find the exclusion to be ambiguous as applied to the *Fleenor* action, the fact that courts from other jurisdictions have found the exclusion to be ambiguous in analogous contexts would compel me to reverse the judgment for Home. The Ohio Court of Appeals has explained:

> Where the language of a clause used in an insurance contract is such that courts of numerous jurisdictions have found it necessary to construe it and in such construction have arrived at conflicting conclusions as to the correct meaning, intent, and effect thereof, the question whether such clause is ambiguous ceases to be an open one.

*Equitable Life Ins. Co. v. Gerwick,* 50 Ohio App. 277, 197 N.E. 923, 925 (1934); *see also George H. Olmsted & Co. v. Metropolitan Life Ins. Co.,* 118 Ohio St. 421, 161 N.E. 276, 277–78 (1928).

I conclude both from the language of the pollution exclusion and from the decisions of courts in other jurisdictions that the exclusion is ambiguous as applied to the *Fleenor* action. Since Ohio law requires that ambiguities be strictly construed against the insurer, I would reverse the grant of summary judgment for Home and remand for further proceedings.[2]

---

[2] At a minimum, I would conclude that the summary judgment was premature. Plaintiffs, as plaintiffs often do in product liability cases, have pleaded very broadly. Until discovery forces them to elect what horse they intend to ride, I feel the insurance company has, at least, a duty to defend, even if it elects to do so under a reservation of rights.